IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA RIOS,<br><br>*Plaintiff*,<br><br>v.<br><br>CHAD E. MARTIN, in his official capacity as Chief of the Hanover Borough Police Department, and HANOVER BOROUGH, PENNSYLVANIA,<br><br>*Defendants*. | Civil Action No. _____<br><br>**Complaint and Jury Demand** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. Without prompting, the Chief of Police for the Hanover Police Department entered Rebecca "Beck" Rios's place of business to threaten criminal penalties—including $2500 in fines and up to a year in jail—if Beck performs tarot card readings in their establishment, violating Beck's First and Fourteenth Amendment rights.

2. To deprive Beck of their constitutional rights to engage in protected speech and to earn a living in a field of their choosing, Chief Chad E. Martin invoked Pennsylvania's antiquated and discriminatory law, 18 Pa. Con. Stat. § 7104 (the "Fortune Telling Statute"), which unconstitutionally prohibits individuals from telling fortunes in exchange for "lucre."

3. Beck now files this civil rights suit to vindicate their rights to engage in free speech and to earn a living without undue government interference.

## Jurisdiction and Venue

4. This is a civil rights suit brought under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983.

5. Beck seeks declaratory and injunctive relief. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2022 and 42 U.S.C. § 1983.

6. Venue is proper in this Court under 28 U.S.C. § 1391.

## The Parties

7. Plaintiff Rebecca "Beck" Rios is a citizen of the United States and a current resident of Hanover, Pennsylvania. Beck operates a small shop in Hanover, The Serpent's Key Shoppe & Sanctuary, which provides an inclusive and welcoming environment for individuals interested in mysticism, mother nature, and the metaphysical universe. An essential component of Beck's business is providing tarot card readings. Without this service, Beck's business will not survive.

8. Defendant Chad E. Martin is the Chief of the Hanover Borough Police Department, which is a law enforcement entity established to serve and protect the public in Hanover. The people of Hanover depend on their police department to uphold this duty and exercise their power within the confines of the Constitution. However, Chief

Martin failed to uphold these essential principles when he threatened to enforce a facially unconstitutional law to prevent Beck from engaging in free speech and using their speech to earn an honest living. Chief Martin is sued only in his official capacity.

9. Defendant Hanover Borough, Pennsylvania is a municipality in York County, Pennsylvania, located at 44 Frederick St., Hanover, Pennsylvania 17331, and oversees the Hanover Borough Police Department. Despite multiple opportunities to withdraw Chief Martin's threats and confirm that it would not enforce the unconstitutional Fortune Telling Statute, Hanover insists that it will continue to prohibit fortune telling within the Borough and will enforce the Fortune Telling Statute against Beck if it receives credible information regarding a violation.

### Factual Allegations

**Beck uses their small business to serve the community.**

10. In 2019, after graduating from college with a degree in fashion design, Beck moved to Hanover to begin their career at a prestigious tailoring company.

11. Like many others, Beck decided to make a career change during the Covid-19 pandemic.

12. After visiting Salem, Massachusetts, Beck was inspired to pursue their childhood dream of opening a shop to give others a glimpse into the mystic.

13. Beck began their entrepreneurial journey by convincing a local tattoo parlor to let them convert its supply closet into a space for tarot card readings and trinket sales.

14. From these humble beginnings, Beck's hard work allowed them to move out of the supply closet and into their own facility, opening The Serpent's Key Shoppe & Sanctuary ("The Serpent's Key") in January 2023.

15. In addition to offering tarot card readings, The Serpent's Key now sells crystals, candles, books, clothing, art, and more, growing from just two vendors to more than fifty.

16. Opening The Serpent's Key fulfilled Beck's lifelong dream to not only run their own shop, but to also create a safe space where individuals are free to express their authentic selves and explore their curiosities about the metaphysical universe.

17. Beck has experienced firsthand the rejection that many endure, even from their closest loved ones, because of their appreciation for and belief in mysticism. Because of this experience, Beck was particularly motivated to create an environment that welcomes all beliefs without judgment.

18. Today, The Serpent's Key serves as an essential sanctuary for marginalized communities in Hanover.

19. For instance, The Serpent's Key has expanded to offer regular events that focus on trauma awareness and healing, wellness, and education. Beck also utilizes their business for charitable causes, such as aiding clothing drives for the underserved transgender community.

20. Without the ability to perform tarot card readings, which is The Serpent's Key primary source of income, Beck could not serve the community of Hanover so adeptly.

21. While undeniably essential to the financial viability of The Serpent's Key, providing tarot card readings is about more than finances for Beck. Reading tarot cards is one of the main components of Beck's spiritual practice.

22. Even for those whose spiritual practice does not include tarot card readings, tarot card readings have value, with many receiving readings as a way to celebrate significant life events, holidays, and birthdays. At its most basic levels, tarot card readings are a form of entertainment and a bonding activity.

23. For instance, many of Beck's customers are mothers and daughters who come to The Serpent's Key for joint readings.

24. Highlighting the fun and entertainment purposes of tarot card readings, Beck has placed disclaimer signs conspicuously throughout The Serpent's Key, informing customers that the tarot card readings are for entertainment and enjoyment purposes and should not be used as professional advice.

## Pennsylvania's Fortune Telling Statute

25. Enacted in 1861, more than 150 years after the Salem Witch Trials, Pennsylvania's Fortune Telling Statute defines that:

> A person is guilty of a misdemeanor of the third degree if he pretends for gain or lucre, to tell fortunes or predict future events, by cards, tokens, the

5

inspection of the head or hands of any person, or by the age of anyone, or by consulting the movements of the heavenly bodies, or in any other manner, or for gain or lucre, pretends to effect any purpose by spells, charms, necromancy, or incantation, or advises the taking or administering of what are commonly called love powders or potions, or prepares the same to be taken or administered, or publishes by card, circular, sign, newspaper or other means that he can predict future events, or for gain or lucre, pretends to enable anyone to get or to recover stolen property, or to tell where lost property is, or to stop bad luck, or to give good luck, or to put bad luck on a person or animal, or to stop or injure the business or health of a person or shorten his life, or to give success in business, enterprise, speculation, and games of chance, or to win the affection of a person, or to make one person marry another, or to induce a person to make or alter a will, or to tell where money or other property is hidden, or to tell where to dig for treasure, or to make a person to dispose of property in favor of another.

18 Pa. Con. Stat. Ann. § 7104(a).

26. A misdemeanor in the third degree, violators of this statute face up to a year in prison and a $2500 fine per violation. *See* 18 Pa. Con Stat. Ann. §§ 1101, 1104.

27. Although the Fortune Telling Statute hinges on whether the speaker "pretends" to tell fortunes or predict the future, the law does not define the term "pretend."

28. Telling fortunes is simply speech.

29. Telling fortunes is simply speech, even if done in exchange for lucre.

30. The Fortune Telling Statute is a content-based restriction on free speech.

31. The Fortune Telling Statute is not narrowly tailored to further a compelling governmental interest.

6

32. The Fortune Telling Statute interferes with individuals' ability to earn a living in their chosen profession.

33. The Fortune Telling Statute does not serve any rational government interest.

34. The Fortune Telling Statute is an antiquated prior restraint on free speech that selectively discriminates against mystics and fails to serve any governmental interest, compelling or otherwise.

35. Most telling, the Commonwealth does not criminalize tarot card reading generally; this act of free speech only becomes a crime when done in exchange for money.

36. Speaking in exchange for money does not provide a rational basis—much less a compelling reason—for prohibition.

37. Economic speech is speech.

38. Further highlighting the lack of any governmental interest in prohibiting fortune telling in exchange for money, the Commonwealth permits individuals to provide "lucre" to casinos, in the form of a "bet," based on the casino's predictions about, for instance, the outcome of a football game.

39. The only relevant distinction between a casino providing "odds" to a gambler and an individual providing a tarot card reading is that the casino's goal is to entice gamblers to act on its predictions, while a fortune teller is simply paid for the service of providing their opinion.

40. Further demonstrating the lack of compelling interest, if the government were genuinely compelled to prohibit economic fortune telling through the Fortune Telling Statute, Mattel could not sell its Magic 8 Ball, Chinese food restaurants could not serve fortune cookies at the end of a meal, and weathermen could not receive a salary for their forecasts. Each of these activities involves providing predictions in exchange for gain or lucre; yet they are permitted in the Commonwealth of Pennsylvania, including in Hanover.

41. Significantly, the Fortune Telling Statute is seldom enforced in the Commonwealth, with numerous fortune-telling businesses operating, without any harm to the public, throughout Pennsylvania.

42. Upon information and belief, there is no evidence that the Fortune Telling Statute advances a government interest.

43. Upon information and belief, there is no evidence of harms that would arise if the Fortune Telling Statute were revoked.

**Chief Martin violated Beck's constitutional rights by threatening to enforce the Fortune Telling Statute.**

44. Unfortunately, Beck is one of the few against whom the Fortune Telling Statute has been weaponized.

45. In October 2023, Main Street Hanover—a collaborative effort between Hanover Borough, Hanover Area Chamber of Commerce, Partnership for Economic

Development of York County, and York County Economic Alliance to revitalize Hanover's economy—published a feature on Beck and The Serpent's Key.

46. In its second paragraph, the article noted that The Serpent's Key offers services, such as tarot card reading. It additionally described Beck as "an experienced tarot card reader" and noted that they offer various types of readings, including a popular "Cosmic Check-in." The feature additionally included photographs of Beck performing a reading.

47. On information and belief, Chief Chad E. Martin of the Hanover Police Department and his wife saw the feature and were personally offended by Beck's engagement in tarot card readings.

48. On or around October 5, 2023, Chief Martin and another police officer entered The Serpent's Key in official Hanover Borough Police Department attire and asked to speak with Beck.

49. When Beck asked permission to record this encounter, Chief Martin falsely informed Beck that they could not record the conversation, interfering with Beck's constitutional right to record the police.[1]

---

[1] Although Chief Martin unconstitutionally prohibited Beck from recording the conversation on their cell phone, *see, e.g.*, *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (explaining the right to record police serves "the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" (quoting Snyder v. Phelps, 562 U.S. 443, 452 (2011)), the interaction was captured by surveillance cameras inside The Serpent's Key.

50. Beck responded that, if the conversation could not be recorded, they could not speak with the officer without an attorney.

51. Despite Beck unequivocally declining to speak with Chief Martin without representation, Chief Martin continued to press, stating that he believed they should be able to have an "adult conversation."

52. Chief Martin then threatened Beck with criminal penalties—specifically $2500 in fines and up to a year in prison—if they perform tarot card readings in their establishment.

53. The Fortune Telling Statute that Chief Martin threatened to enforce is so plainly unconstitutional that any reasonable person would recognize its unenforceability.

54. After the encounter, Beck, through counsel, corresponded with Hanover, highlighting the constitutional shortcomings of the Fortune Telling Statute and requesting confirmation that Hanover would not enforce—or threaten to enforce—this law against Beck.

55. Following an equivocal response from Hanover, Beck, again through counsel, sought clear confirmation that the Borough would not enforce the Fortune Telling Statute.

56. Hanover stated that it could not—and would not—confirm that it will not enforce the Fortune Telling Statute if it receives credible information that Beck has violated the Statute, expressly preserving its threat of enforcement.

57. Hanover's threat of enforcement continues today.

58. The looming threat of up to a year in jail and a $2500 fine, per offense, would chill the speech of an ordinary person.

59. Hanover's looming threat of enforcement against Beck has chilled her speech, negatively impacted her willingness to perform tarot card readings, and has threatened her business and, in turn, her livelihood.

### Injury to Plaintiff

60. By interfering with Beck's constitutional rights, Defendants have directly and proximately caused Beck significant harms, including but not limited to:

   a. Threating Beck with up to a year in jail and $2500 in fines for each occurrence of tarot card reading;

   b. Interfering with Beck's business operations;

   c. Causing Beck's business ongoing and irreparable harm;

   d. Chilling Beck's ability to exercise their free speech without fear of criminal prosecution;

   e. Interfering with Beck's ability to earn an honest living in their chosen profession without feal of criminal prosecution;

   f. Discriminating against Beck because of the content of their speech;

g.  Causing Beck severe stress and anxiety related to facing unconstitutional criminal charges and the risk of severe criminal sanctions, including imprisonment;

h.  Legal expenses related to defending against unconstitutional threats;

i.  Depriving Beck of their faith in the criminal justice system in Hanover, a place they call home; and

j.  Forcing Beck to endure an unconstitutional process.

## Causes of Action

### Count I
### 42 U.S.C. § 1983 – First Amendment
### (The Fortune Telling Statute is Unconstitutional in its Application)

61. Beck realleges and incorporates the allegations in Paragraphs 1 through 60 of this Complaint as if fully stated herein.

62. The Fortune Telling Statute violates the First Amendment as applied to Beck's provision of tarot card readings in the Commonwealth.

63. The First Amendment to the U.S. Constitution, which is applied to the states through the Fourteenth Amendment, protects individuals' right to free speech, including telling fortunes and reading tarot cards.

64. Receiving monetary compensation for speech does not diminish its First Amendment protections.

65. When Beck provides tarot card readings to their customers, they are simply using speech to communicate ideas and opinions regarding what the future may hold.

66. Beck does not entice individuals to act upon their speech.

67. To the contrary, Beck expressly informs customers that their tarot card readings should not replace professional advice.

68. Beck's tarot card readings are purely speech fully protected by the First Amendment.

69. By prohibiting Beck from providing tarot card readings in exchange for money, Defendants control the content of Beck's communications with their customers.

70. The Fortune Telling Statute is a content-based restriction against telling fortunes that lacks any rational basis, much less compelling government interest, and derives solely from animus against fortune tellers.

71. The Fortune Telling Statute is not narrowly tailored to serve a compelling government interest.

72. Defendants have no interest, compelling or otherwise, in preventing Beck from providing tarot card readings, evidenced by the Commonwealth's express allowance of, among other things, free fortune telling, sports betting, fortune cookies, weathermen, and Magic 8 Balls.

73. On October 5, 2023, Chief Martin, acting on behalf of the Hanover Borough Police Department, threatened to enforce this unconstitutional law against Beck,

13

specifically threatening Beck with up to a year in jail and $2500 in fines per violation if Beck engages in tarot card reading or any other form of fortune telling.

74. Hanover's threats of enforcement are not idle.

75. Despite being given multiple opportunities to confirm that it will not enforce the Fortune Telling Statute, Hanover has expressly stated that it will pursue and enforce this law against Beck if it receives credible information that they have violated the Fortune Telling Statute.

76. Unless Defendants are enjoined from enforcing the Fortune Telling Statute, Beck will suffer continuing and irreparable harm, as outlined in Paragraph 60.

**Count II**
**42 U.S.C. § 1983 – First Amendment**
**(The Fortune Telling Statute is Unconstitutional on its Face)**

77. Beck realleges and incorporates the allegations in Paragraphs 1 through 60 of this Complaint as if fully stated herein.

78. On its face, the Fortune Telling Statute is a content-based prior restraint on speech, as it applies only to economic speech that constitutes "fortune telling," and it is unconstitutional.

79. The First Amendment to the U.S. Constitution, applied to the states through the Fourteenth Amendment, protects individuals' right to free speech, including telling fortunes and reading tarot cards.

80. Receiving monetary compensation for speech does not affect its First Amendment protections.

81. Providing tarot card readings is a form of speech fully protected by the First Amendment.

82. The Fortune Telling Statute is not narrowly tailored to serve a compelling government interest.

83. In fact, the Fortune Telling Statute lacks any rational basis and derives solely from long-held animus against fortune tellers.

84. The unprincipled nature of the Fortune Telling Statute is evidenced by the Commonwealth's allowance of, among other things, free fortune telling, sports betting, fortune cookies, weather forecasts, and the sale of Magic 8 Balls, all of which concern fortune telling, but are exempted from criminal penalties.

85. The disparate application of the Fortune Telling Statute emphasizes its unconstitutional nature and its foundation in animus.

86. Unless Defendants are enjoined from enforcing the Fortune Telling Statute, Beck will suffer continuing and irreparable harm, as outlined in Paragraph 60.

## Count III
## 42 U.S.C. § 1983 – Fourteenth Amendment
### (The Fortune Telling Statute Violates Beck's Right to Due Process)

87. Beck realleges and incorporates the allegations in Paragraphs 1 through 60 of this Complaint as if fully stated herein.

88. By irrationally prohibiting Beck from performing tarot card readings in exchange for payment, Defendants have violated Beck's Fourteenth Amendment right to due process of law.

89. The substantive component of the Fourteenth Amendment's Due Process Clause includes the right to choose one's field of private employment and the right to earn an honest living.

90. Due process requires that restrictions on such economic freedoms must be rationally related to a legitimate government purpose.

91. The Fortune Telling Statute restricts Beck's ability to earn an honest living in their chosen field of private employment.

92. If Beck is prohibited from providing tarot card readings, their business will not survive.

93. There is no rational basis for the Fortune Telling Statute.

94. Demonstrating the lack of a rational basis for the Fortune Telling Statute, the Commonwealth expressly permits speakers to tell fortunes for free and activities such as sports betting. Furthermore, restaurants are allowed to serve fortune cookies, stores may sell Magic 8 Balls, and even weathermen are paid to forecast into the future.

95. By selectively policing fortune telling, Defendants have demonstrated the arbitrary, unfounded basis of the Fortune Telling Statute.

96. Unless Defendants are enjoined from enforcing the Fortune Telling Statute, Beck will suffer continuing and irreparable harm, as outlined in Paragraph 60.

## Count IV
### 42 U.S.C. § 1983 – First and Fourteenth Amendments
### (The Fortune Telling Statute is Unconstitutionally Vague)

97. Beck realleges and incorporates the allegations in Paragraphs 1 through 60 of this Complaint as if fully stated herein.

98. The First and Fourteenth Amendments to the U.S. Constitution require that restrictions on free speech be precise enough to provide speakers with fair warning that their speech could subject them to criminal liability.

99. The Fortune Telling Statute imposes criminal liability against one who "pretends" to tell the future in exchange for lucre.

100. The Fortune Telling Statute does not define the term "pretend."

101. In practice, it appears that the government assumes that all individuals who tell fortunes are "pretending" to do so, without regard for the speaker's experience.

102. For instance, under the Fortune Telling Statute, an individual could sincerely believe that they have the ability to forecast the future through tarot cards and have no intention to "pretend"; yet, if the government determines that such a skill is not possible, the fortune teller may be subject to criminal liability.

103. Due to the failure to clearly define "pretend," it is impossible for a fortune teller to know whether they could face criminal liability for providing fortunes, even if they are subjectively not "pretending" when speaking to customers.

104. The failure to clearly articulate the extent and application of the Fortune Telling Statute precludes adequate notice and allows impermissible discretion in application, violating Beck's First and Fourteenth Amendment Rights.

105. Unless Defendants are enjoined from enforcing the Fortune Telling Statute, Beck will suffer continuing and irreparable harm, as outlined in Paragraph 60.

## Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment: (1) declaring the Fortune Telling Statute unconstitutional, both facially and as applied to Plaintiff; (2) permanently enjoining Defendants and their agents from enforcing the Fortune Telling Statute; (3) awarding attorneys' fees, costs, and expenses under 42 U.S.C. § 1988; and (4) providing any other legal or equitable relief that the Court deems just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all issues triable under Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 19, 2024

Respectfully submitted,

/s/ *Alexa L. Gervasi*

Alexa L. Gervasi (PA Bar No. 334530)
James W. Kraus (PA Bar No. 56881)
Turahn L. Jenkins (PA Bar No. 201267)

KRAUS JENKINS PLLC
428 Boulevard of the Allies, Ste. 700
Pittsburgh, PA 15219
Tel.: (412) 546-0780
Email: agervasi@krausjenkins.com
       jkraus@krausjenkins.com
       tjenkins@krausjenkins.com

*Counsel for Plaintiff*