## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA RIOS, | : | Civil No. 1:24-CV-01399 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHAD E. MARTIN, *in his official capacity as Chief of the Hanover Borough Police Department*, and HANOVER BOROUGH, PENNSYLVANIA, | : : : : : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **ORDER**

Currently pending before the court is a motion to intervene filed by the Attorney General of Pennsylvania ("OAG"). (Doc. 31.) For the reasons that follow, the court will **GRANT** the motion.

Plaintiff, Rebecca "Beck" Rios ("Rios") filed this lawsuit, challenging the constitutionality of 18 Pa. Con. Stat. § 7104 ("Fortune-Telling Statute"). The Fortune-Telling Statute criminalizes, *inter alia*, "pretend[ing] for gain or lucre, to tell fortunes or predict future events." 18 Pa. Con. Stat. § 7104. Rios owns and operates The Serpent's Key Shoppe & Sanctuary. (Doc. 1, ¶ 7.) An "essential component" of this business is tarot card readings. (*Id.*) Indeed, Rios alleges that tarot card readings constitute the shop's "primary source of income." (*Id.* ¶ 20.) In October 2023, Defendant Chad Martin, the Chief of the Hanover Borough Police Department, allegedly threatened Rios with criminal penalties, pursuant to the

1

Fortune-Telling Statute, if Rios continued performing tarot card readings. (*Id.* ¶ 52.) This lawsuit followed. In the complaint, Rios alleges that the Fortune-Telling Statute (1) violates the First Amendment to the United States Constitution, both facially and as-applied; (2) violates the Due Process Clause of the Fourteenth Amendment; and (3) is unconstitutionally vague in contravention of the First and Fourteenth Amendments. (*Id.* ¶¶ 61–105.)

OAG now seeks to intervene in this action. (Doc. 31.) OAG contends it has a right to intervene pursuant to 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1(c). (Doc. 32, pp. 3–4.)[1] 28 U.S.C. § 2403(b) reflects Congress's expectation that states generally shall have the opportunity to defend their statutes from constitutional challenge in federal court. The statute states:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(b). Federal Rule of Civil Procedure 5.1 implements Congress's statutory directive. *United States v. Stuler*, Civil No. 08-273, 2018 WL 11587725,

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

at *1 (W.D. Pa. Feb. 13, 2018).  Under Rule 5.1, a plaintiff challenging the constitutionality of a state law must "file a notice of constitutional question stating the question and identifying the paper that raises it" and then "serve the notice and paper . . . on the state attorney general."  Fed. R. Civ. P. 5.1(a).  Thereafter, pursuant to Rule 5.1(c), the state "attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier."  Fed. R. Civ. P. 5.1(c).

Rios contends that OAG's motion is untimely under Rule 5.1(c) for three reasons, none of which are availing.  First, Rios argues that OAG's motion is untimely, because OAG filed it about eight months after Rios first notified OAG of the constitutional challenge on August 20, 2024.  (Doc. 36, p. 1.)  Second, Rios avers that Defendants confirmed in the parties' February 4, 2025, joint status report, Doc. 29, that OAG had notice of the constitutional challenge.  (Doc. 36, p. 2.)  These two arguments fail for the same reason.  Rios appears to have first notified OAG of this lawsuit and the constitutional challenge presented therein on August 20, 2024.  (Doc. 28, pp. 4–5.)  Yet, actual notice is irrelevant under the plain language of Rule 5.1(c).  OAG's 60-day period to intervene begins when the notice of constitutional challenge is filed or when the court certifies the challenge to the state attorney general.  Fed. R. Civ. P. 5.1(c).  Rios provides no authority to suggest anything else can trigger the 60-day period.  Accordingly, whatever actual

notice OAG had of Rios's constitutional challenge is irrelevant for present purposes.

Third, Rios argues that OAG's 60-day period to intervene began when Rios filed the notice of constitutional challenge on December 2, 2024.  (Doc. 36, p. 2.) The filing to which Rios refers is not a standalone document on this case's docket. Instead, it is an exhibit appended to Rios's brief in opposition to Defendants' motion to dismiss.  (Doc. 16, pp. 30–32.)  Whether Rios's "filing" was sufficient under Rule 5.1 has already been decided by this court.  On January 30, 2025, the court issued an order, which stated in part, "Rios has not fulfilled Rule 5.1's notice requirement."  (Doc. 27, p. 2.)[2]  Based on this previous ruling, OAG's 60-day window did not start when Rios's brief in opposition was filed.

Following the court's January 30 order, Rios filed a separate notice of constitutional challenge on February 4, 2025.  (Doc. 28.)  Recognizing that no "separate 'notice of constitutional question'" had previously been filed, Rios made the February 4 filing in order to "ensure full compliance with all Federal Rules." (Doc. 29, p. 2.)  The court finds that OAG's 60-day window to intervene under Rule 5.1(c) began when Rios filed the notice of constitutional challenge on February 4, 2025.  OAG filed its motion to intervene on April 2, 2025. Accordingly, OAG's motion is timely.  Having found OAG's motion timely, the

---

[2] The court's order was issued prior to this case being transferred to the undersigned.

court is bound to grant intervention pursuant to 28 U.S.C. § 2403(b) and Rule 5.1(c).[3]

**CONCLUSION**

For the reasons stated herein, **IT IS ORDERED THAT** the motion to intervene filed by OAG, Doc. 31, is **GRANTED**.  **IT IS FURTHER ORDERED THAT** if OAG wishes to file a motion to dismiss and a brief in support, such documents shall both be **filed by May 19, 2025**.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Judge
> Middle District of Pennsylvania

Dated: May 2, 2025

---

[3] The court is also bound to grant intervention under Rule 24(a)(1), which states, "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(a)(1).