**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Rebecca Rios, | |
| Plaintiff, | No. 1:24-cv-1399 |
| v. | Judge Wilson |
| Chad E. Martin and Hanover Borough, Pennsylvania, | Electronically Filed Document |
| Defendants. | |

**THE ATTORNEY GENERAL OF PENNSYLVANIA'S
BRIEF IN SUPPORT OF HIS MOTION TO DISMISS**

The Attorney General of Pennsylvania files this brief in support of his Motion to Dismiss

## I.    Statement of Facts

Plaintiff Rebecca "Beck" Rios allegedly operates a business in Hanover, Pennsylvania, that allegedly provides tarot card readings." ECF No. 1 ¶ 7. These readings are allegedly the business's primary source of income. *Id.* ¶ 20.

Defendant Chad E. Martin, the Chief of Police of Hanover, Pennsylvania, has allegedly threatened to prosecute Rios for these readings under 18 Pa. C.S. § 7104(a), which makes it a crime to, *inter alia*, "pretend[] for gain or lucre[] to tell fortunes or predict future events[.]" (the "Fortune-Telling Statute"). ECF No. 1 ¶¶ 44–59.

1

## II.    Procedural History

Rios commenced this action on August 19, 2024, by filing the Complaint. ECF No. 1. That pleading is the operative one, and contains four counts:

- Count I argues that applying the Fortune-Telling Statute to Rios's tarot card readings violates the First Amendment's Free Speech Clause;

- Count II argues that the Fortune-Telling Statute on its face violates the First Amendment's Free Speech Clause;

- Count III argues that the Fortune-Telling Statute irrationally prohibits Rios from charging for the tarot card readings, in violation of the Fourteenth Amendment's Due Process Clause; and

- Count IV argues that the Fortune-Telling Statute is unconstitutionally vague.

On October 21, 2024, Defendants moved to dismiss that Complaint in its entirety. ECF Nos. 10. That motion is fully briefed, but remains pending. *See* ECF Nos. 11, 16, 26.

On May 2, 2025, this Court permitted the Attorney General to intervene in this action to defend the constitutionality of the Fortune-Telling Statute. ECF No. 38. The Attorney General now moves to dismiss all the facial constitutional challenges from the Complaint.[1]

---

[1]    The Attorney General is not moving to dismiss Count I, which brings an as-applied challenge to the Fortune-Telling Statute under the Free Speech Clause, but reserves the right to conduct discovery on, and defend against, that claim.

And while it is unclear from the Complaint whether Counts III and IV raise facial challenges, statements in Rios's Brief in Opposition to Defendants' Motion to Dismiss suggest that Counts III and IV do bring such challenges. *See* ECF No. 16 at

## III.    Questions Presented

1.    Whether the Fortune-Telling Statute prohibits only fraud, and thus does not violate the First Amendment's Free Speech Clause? *Suggested Answer: Yes.*

2.    Whether the Fortune-Telling Statute is rationally related to the Commonwealth's interest in preventing fraud? *Suggested Answer: Yes.*

3.    Whether the Fortune-Telling Statute, as interpreted to prohibit only fraud, is unconstitutionally vague. *Suggested Answer: No.*

## IV.    Argument

### 1.    <u>The Fortune-Telling Statute prohibits only fraud, and thus does not violate the First Amendment's Free Speech Clause.</u>

Facial challenges to laws under the First Amendment are "hard to win." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). In fact, they succeed only if a plaintiff can show that "a **substantial** number of the law's applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (emphasis added).

Rios cannot satisfy this "rigorous standard." *Id.* This is because the Fortune-Telling Statute prohibits **only** fraudulent conduct, and the Government may prohibit

---

16, 20. *But see Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

fraud "without affronting the First Amendment." *United States v. Alvarez*, 567 U.S. 709, 723 (2012).

> A.    *The Fortune-Telling Statute Only Prohibits Fraudulent Conduct*

Before the Court can determine whether the Fortune-Telling Statute is facially unconstitutional, it must first determine what the Fortune-Telling Statute prohibits.[2] The Pennsylvania Supreme Court would likely rule that the Fortune-Telling Statute prohibits only fraudulent conduct.[3] So this Court must, too.[4]

> Section 7104(a) states that a person commits a crime if he, *inter alia*:
>
> pretends for gain or lucre[] to tell fortunes or predict future events[] by cards, tokens, the inspection of the head or hands of any person, or by the age of anyone, or by consulting the movements of the heavenly bodies, or in any other manner . . . .

18 Pa. C.S. § 7104(a). In other words, Section 7104(a) prohibits pretending to tell the future via supernatural means for profit.[5]

---

[2]    *See Broadrick v. Oklahoma*, 413 U.S. 601, 617 n. 16 (1973) ("[A] federal court **must** determine what a state statute means before it can judge its facial unconstitutionality." (emphasis added)).

[3]    *Cf. Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634 (3d Cir. 2000) ("[I]t is the **duty** of [this] Court to predict how the Pennsylvania Supreme Court would interpret [the law at issue] if presented with th[e] case." (emphasis added)).

[4]    *Cf. Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n. 5 (1982) ("In evaluating a facial challenge to a state law, a federal court **must**, of course, consider any limiting construction that a state court or enforcement agency has proffered." (emphasis added)).

[5]    Section 7104(a) criminalizes other conduct, too, but the Attorney General understands that Rios is challenging only the above-quoted provision. So it is that

Now, it is beyond peradventure that no one has psychic powers.[6] But it is equally obvious that there are those who falsely claim to possess such powers, and who deliberately seek to take advantage of unsuspecting and unsophisticated individuals who may fall prey to such charlatans. Section 7104(a) simply guards against that evil.[7]

The Pennsylvania Superior Court, in fact, has ***already recognized*** that the General Assembly had that purpose when passing Section 7104(a). In

---

provision—and only that provision—that the Attorney General will address in this brief, and all references to "the Fortune-Telling Statute" are to that provision only. If the Attorney General's understanding is incorrect—i.e., if Rios is challenging other provisions of Section 7104(a)—then the Attorney General reserves the right to defend those other provisions.

[6] Rios does not appear to be personally claiming psychic abilities. But the Complaint suggests that others may have them. *See* ECF No. 1 ¶ 101. The Court can reject this premise out of hand. *See Rogers v. Essex Cnty.*, 429 F. App'x 79, 82 (3d Cir. 2011) (allegations of "paranormal phenomena" are "fantastical, delusional, and simply unbelievable," and thus cannot sustain a claim); *Caiby v. Ferguson*, 788 F. App'x 830, 831 (3d Cir. 2019) (allegations are "clearly baseless" if they are "fanciful, fantastic, and delusional"); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Battistone v. Benedetti*, 385 Pa. 163, 168 (1956) (rejecting "explanation[s] which lie[] in the realm of the unknowable and unascertainable" and noting that a "jury [may not] base its verdict on [a] mysterious something which exists only in the misty shadowlands of shrouded mystery and supernatural supposition").

[7] *Cf.* 1 Pa. C.S. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly."); *id.* § 1921(c)(3) ("[T]he intention of the General Assembly may be ascertained by considering . . . [t]he ***mischief to be remedied***." (emphasis added)).

5

*Commonwealth v. Viscount*, 118 Pa. Super. 595 (1935), a woman was charged with, and convicted for, fraudulently purporting to cast and remove various spells. *Id.* at 597–98. The Pennsylvania Superior Court, affirming those convictions, noted that Section 7104(a)[8] "is a very meritorious [law], designed to protect the ignorant, superstitious, and credulous who, like the poor, are always among us." *Id.* at 605.

That same decision, furthermore, strongly suggested that a conviction under Section 7014(a) requires a showing of fraud. On appeal, the purported sorceress challenged the form of the indictment, which charged her with, *inter alia*, "***fraudulently*** and wickedly pretend[ing] . . . that a spell was cast upon [another] which would cause [the other's] death," and accepting $100 "to remove said spell." *Id.* at 598 (emphasis added). The Superior Court rejected this challenge, holding that this language "charged the offense in ***substantially*** the terms of the act[.]" *Id.* at 601 (emphasis added). The purported sorceress also challenged the admission of certain evidence. *Id.* at 601–02. The Superior Court rejected this challenge, too, holding that it was admissible "to show the motive and plan and the common scheme of the defendant," which was done "for the purpose of ***deceiving*** her patrons." *Id.* at 602 (emphasis added)).

---

[8]    At the time, the law was codified at 18 P.S. §§ 2651–2656.

Of course, if there were any doubt regarding the General Assembly's intent to bar only fraudulent conduct, the Court could simply apply the longstanding principle that "[t]he language of a statute must, if possible, be so interpreted as to conform its effect to the requisitions of the constitution, not so as to violate them." *Hinnershitz v. United Traction Co.*, 199 Pa. 3, 48 A. 874 (1901).[9]

The Pennsylvania Superior Court, in fact, has ***already utilized this canon*** when interpreting Section 7104(a). In *Commonwealth v. O'Malley*, 81 Pa. Super. 100 (1923), the Superior Court suggested that an individual charged under the Fortune-Telling Statute could not be convicted if his or her conduct was religiously motivated. *Id.* at 104 ("The question whether the defendant was conducting a church or was merely using the alleged organization to get unsuspecting persons to patronize her for the purpose of having their fortunes told was clearly submitted to the jury and no exception was taken to the charge.").

And a few years later, in *Commonwealth v. Blair*, 92 Pa. Super. 169 (1927), the Superior Court affirmed this defense. There, a "religious healer" claiming to be

---

[9]   *See also* 1 Pa. C.S. § 1922(3) ("In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: . . . (3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth."); *Stretton v. Disciplinary Bd. of Supreme Ct. of Pennsylvania*, 944 F.2d 137, 144 (3d Cir. 1991) ("[T]he elementary rule is that every reasonable construction ***must*** be resorted to, in order to save a statute from unconstitutionality." (emphasis added)).

7

a reverend prayed over, and placed his hands upon, various individuals. *Id.* at 170–71. The healer was charged and convicted of violating the portion of Section 7104(a) that prohibits, "for gain or lucre, pretend[ing] to effect certain purposes by spells, charms, necromancy and incantations." *Id.* at 170.

The Superior Court reversed that conviction. *Id.* at 172. In doing so, it noted the constitutional right to freely exercise one's religion (i.e., the right "accorded to anyone . . . to believe and assert that prayer will heal the sick"), and concluded that Section 7104(a) was ***not*** enacted "to restrain such religious organizations from putting in practice their beliefs in this regard." *Id.* at 171.

Now, it is true that *O'Malley* and *Blair* deal with Free-Exercise challenges to Section 7104(a), not Free-Speech challenges.[10] *O'Malley* and *Blair* are nevertheless relevant because they demonstrate how Pennsylvania courts use the constitutional-avoidance canon, especially when laws potentially infringe on freedoms protected by the First Amendment.

The Third Circuit, when interpreting Pennsylvania law, ***also*** routinely applies the constitutional-avoidance canon when interpreting laws that potentially infringe on freedoms protected by the First Amendment. In *Stretton v. Disciplinary Board*,

---

[10] Despite an "appreciation for and belief in mysticism," ECF No. 1 ¶ 17, Rios does not appear to be mounting a Free Exercise challenge to the Fortune-Telling Statute. *See, e.g., id.* ¶ 63 (mentioning only the "right to free speech").

944 F.2d 137 (3d Cir. 1991), for example, a judicial candidate sought an injunction against Canon 7 of Pennsylvania's Code of Judicial Conduct, which prohibited him from discussing "disputed legal or political issues." *See id.* at 141. The District Court held that "a narrow construction of the Code was unlikely" and struck down Canon 7 as "drastically overbroad" in violation of the First Amendment. *Id.* at 139–40.

But the Third Circuit reversed. *Id.* at 144. Noting that "courts ***routinely narrow*** statutes to avoid a potentially overbroad reach"—and that the Pennsylvania Supreme Court, in fact, "has in the past interpreted its rules in the light necessary to obviate constitutional objections"—the Third Circuit "predit[ed] that [that c]ourt would read [] Canon 7[] to mean that 'disputed legal or political issues' refers only to those issues that are likely to come before the court," and upheld the law. *Id.* (emphasis added).[11]

This Court, then, should interpret the Fortune-Telling Statute as prohibiting only fraudulent conduct.[12]

---

[11] *See also Bruni v. City of Pittsburgh*, 941 F.3d 73, 85, 87 (3d Cir. 2019) (individuals brought a facial challenge to a city ordinance that arguably prohibited certain speech within 15 feet of the entrance of any hospital or healthcare facility; the Third Circuit noted that "it has long been a tenet of First Amendment law" to seek a "narrowing construction" when faced with facial challenges, "impose[d] [such] a limiting construction," and ultimately upheld the ordinance).

[12] As noted above, the Court can reach this conclusion by recognizing that the General Assembly intended only to prevent such deception, or by applying the constitutional-avoidance canon (or some combination of both). If this were not enough, there is yet a third canon—i.e., the longstanding principle that "[p]enal

### B.    Fraud is not protected by the First Amendment.

With that interpretation in hand, affirming the facial constitutionality of the statute is simple. That is because "the First Amendment does not shield fraud." *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). Indeed, "[f]rom 1791 to the present," "the First Amendment has permitted restrictions upon . . . fraud, . . . the prevention and punishment of which have ***never*** been thought to raise ***any*** Constitutional problem." *United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (emphasis added). Thus, even "content-based restrictions on speech"[13] are permitted when the government is regulating fraud. *United States v. Alvarez*, 567 U.S. 709, 717 (2012).[14]

---

statutes are to be construed strictly," *Quinney v. Commonwealth*, 1 Monag. 158, 159 (Pa. 1889); *see also* 1 Pa. C.S. § 1928(b)(1) (noting that "[p]enal provisions" of a law "shall be strictly construed")—that should remove any doubt that the Fortune-Telling Statute should be interpreted narrowly, and as prohibiting only fraud.

[13]   The Attorney General does not concede that the Fortune-Telling Statute is a content-based restriction on speech. But Rios has taken that position. *See* ECF No. 1 ¶ 30.

[14]   *Cf. City of Austin, Texas v. Reagan Na''l Advert. of Austin*, LLC, 596 U.S. 61, 87 n.1 (2022) (Thomas, J., dissenting) ("For several categories of historically unprotected speech, including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct, the government ordinarily may enact content-based restrictions without satisfying strict scrutiny.").

\*      \*      \*

The Pennsylvania Supreme Court would interpret the Fortune-Telling Statute as prohibiting only fraud. So this Court must, too. And because fraud enjoys no First Amendment protection, the Fortune-Telling Statute is facially constitutional. This Court, then, should dismiss Count II of Rios's Complaint.

> 2.      The Fortune-Telling Statute is rationally related to the Commonwealth's interest in preventing fraud.

The Fourteenth Amendment recognizes "the liberty to pursue a calling or occupation." *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994). But even assuming that reading tarot cards is one "of the common occupations of life" subject to such protection, *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923),[15] Rios admits that laws impinging on that interest are subject only to rational-basis review. ECF No. 1 ¶ 90. That is, such laws "withstand[] a substantive due process challenge if the state identifies a legitimate state interest that the legislature rationally could conclude was served by the statute." *Sammon v. New Jersey Bd. of Med. Examiners*, 66 F.3d 639, 645 (3d Cir. 1995).

"It goes without saying that there is a substantial governmental interest in protecting the public from fraud." *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 612 (2021). It should be equally obvious that the General Assembly could

---

[15]   The Attorney General reserves the right to take on position on whether being a tarot card reader is so protected.

rationally conclude that criminalizing certain types of fraud (such as fraud involving claims of clairvoyance) would help serve that interest.

Rios does not appear to dispute that proposition. Instead, Rios focuses on the fact that the General Assembly has not criminalized other activity. ECF No. 1 ¶ 94. But even assuming that other activity could ever constitute fraud,[16] "[a] state is permitted to take steps, albeit tiny ones, that only partially solve a problem without totally eradicating it." *Stretton*, 944 F.2d at 146. That is, a law subject to rational-basis review will not be struck down simply because it could have more fully or effectively served the legitimate state interest. *See Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 489 (1955) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.").

*    *    *

This Court, then, should dismiss Count III of Rios's Complaint to the extent it raises a facial challenge to the Fortune-Telling Statute.

### 3.    The Fortune-Telling Statute is not unconstitutionally vague.

As Rios recognizes, ECF No. 16 at 18, a law is unconstitutionally vague if it "(1) fails to give ordinary people fair notice of the conduct it punishes, or (2) is so

---

[16] *But seeee infra.*

standardless that it invites arbitrary enforcement." *Lewis v. Canaan*, 664 F. App'x 153, 156 (3d Cir. 2016) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). But as explained above, this Court "must determine what [the Fortune-Telling Statute] means before it can judge its facial unconstitutionality." *Broadrick v. Oklahoma*, 413 U.S. 601, 617 n. 16 (1973). And when doing so, it must apply the normal canons of construction, including the constitutional-avoidance canon.[17]

For the reasons discussed above, the Fortune-Telling Statute must be interpreted as prohibiting only fraud. With that interpretation in mind, all of Rios's arguments about the Fortune-Telling Statute's purported vagueness must fail.

For example, Rios notes that Section 7104(a) does not define "pretend,"[18] and worries that "individual[s] [who] sincerely believe that they have the ability to forecast the future through tarot cards . . . may be subject to criminal liability." ECF No. 1 ¶ 102. But bedrock elements of fraud are ***knowledge*** that a statement is false, and ***intent*** to deceive. *See, e.g., Gregg v. Ameriprise Fin., Inc.*, 664 Pa. 567, 581

---

[17]  *Cf. Riel v. City of Bradford*, 485 F.3d 736, 749 n.6 (3d Cir. 2007) (applying constitutional-avoidance canon to city ordinance that "may be unconstitutionally vague").

[18]  Section 7104(a) was enacted in 1861. At that time, "pretend" meant essentially the same thing as it means now. *See* Noah Webster, An American Dictionary of the English Language 638 (1841) (defining "pretend" as "[t]o hold out, as a false appearance; to offer something feigned instead of that which is real").

(2021). So someone who truly believes they have clairvoyant powers will likely not violate the Fortune-Telling Statute.

Rios also worries about those who "provide tarot card readings at . . . Halloween part[ies] . . . [and] at school fundraising carnival[s.]" ECF No. 16 at 18–19. But such individuals—who are akin to actors playing a tarot card reader on stage during a theatrical production—will also likely lack the necessary *mens rea* for this crime.

Rios also worries about—indeed, expresses "***more*** concern[] about"—the potentially "arbitrary application" of the Fortune-Telling Statute to casinos offering sports betting, Chinese food restaurants providing fortune cookies, Mattel selling Magic 8 balls, and meteorologists offering weather forecasts. *See* ECF No. 16 at 19–20. But the Fortune-Telling Statute, properly interpreted, will likely have no application to these organizations and individuals. Casinos, after all, have a financial interest in making sports-betting odds accurate, not knowingly false. The same is true about meteorologists; while they are often wrong, they have a financial interest in being right. And it is unlikely that any jury would find that reliance on a Magic 8 Ball or a fortune cookie was justified. *Cf. Gregg,* 664 Pa. at 581 (noting that fraud requires a knowingly false statement, and justifiable reliance on that statement).

*    *    *

This Court, then, should dismiss Count IV of Rios's Complaint to the extent it raises a facial challenge to the Fortune-Telling Statute.

## V.    Conclusion

For those reasons, this Court should dismiss Count II in its entirety, and Counts III & IV to the extent they raise facial challenges.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    */s/ Jacob Frasch*
Jacob Frasch
Office of Attorney General                         Deputy Attorney General
15th Floor, Strawberry Square                  Attorney ID PA No. 328362
Harrisburg, PA 17120
(717) 783-7560                                         Nicole R. DiTomo
jfrasch@attorneygeneral.gov                    Chief Deputy Attorney General
                                                               Civil Litigation Section

Date: June 16, 2025                                  Counsel for the Attorney General of Pennsylvania

15

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 4.2, I certify that a true and correct copy of the foregoing was served on the following individuals via the indicated means on June 16, 2025:

VIA ELECTRONIC FILING

Alexa L. Gervasi, Esquire
Cobb & Johns PLLC
13341 W US Hwy 290, Building 2
Austin, TX 78737
alexa@cobbjohns.com
*Counsel for Plaintiff*

Elizabeth Kramer, Esquire
Isaac P Wakefield, Esquire
Salzmann Hughes, P.C.
1801 Market Street, Suite 300
Camp Hill, PA 17011
EKramer@salzmannhughes.com
iwakefield@salzmannhughes.com
*Counsel for Defendants*

/s/ Jacob Frasch
Jacob Frasch
Deputy Attorney General

16