## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA RIOS, | : | Civil No. 1:24-CV-01399 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHAD E. MARTIN *in his official* | : | |
| *capacity as Chief of the Hanover* | : | |
| *Borough Police Department*, and | : | |
| HANOVER BOROUGH, | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

This case challenges the constitutionality of a state statute that has been

Pennsylvania law for one hundred and sixty-four years.  In 1861, Pennsylvania

passed a statute that criminalizes the act of "pretend[ing] for gain or lucre" to

perform a variety of fortune-telling and clairvoyant activities ("Fortune Telling

Statute" or "Statute").   18 Pa. Con. Stat. § 7104(a).  Specifically, the Statute reads:

> A person is guilty of a misdemeanor of the third degree if he pretends
> for gain or lucre, to tell fortunes or predict future events, by cards,
> tokens, the inspection of the head or hands of any person, or by the age
> of anyone, or by consulting the movements of the heavenly bodies, or
> in any other manner, or for gain or lucre, pretends to effect any purpose
> by spells, charms, necromancy, or incantation, or advises the taking or
> administering of what are commonly called love powders or potions, or
> prepares the same to be taken or administered, or publishes by card,
> circular, sign, newspaper or other means that he can predict future
> events, or for gain or lucre, pretends to enable anyone to get or to
> recover stolen property, or to tell where lost property is, or to stop bad
> luck, or to give good luck, or to put bad luck on a person or animal, or

> to stop or injure the business or health of a person or shorten his life, or to give success in business, enterprise, speculation, and games of chance, or to win the affection of a person, or to make one person marry another, or to induce a person to make or alter a will, or to tell where money or other property is hidden, or to tell where to dig for treasure, or to make a person to dispose of property in favor of another.

*Id.* Plaintiff, Rebecca "Beck" Rios ("Rios"), contends that this Statute violates the First and Fourteenth Amendments of the United States Constitution. Defendants and Intervenor Defendant (collectively, "Movants") now move to dismiss Rios's complaint. For the reasons that follow, the court will dismiss without prejudice some, but not all, of Rios's claims.

## BACKGROUND

### A. Facts

Inspired by a trip to Salem, Massachusetts, Rios decided during the COVID-19 pandemic to open "a shop to give others a glimpse into the mystic." (Doc. 1, ¶ 12.) To this end, Rios began performing tarot card readings and selling trinkets out of the supply closet of a local tattoo parlor. (*Id.* ¶ 13.) In 2023, Rios moved this entrepreneurial endeavor into a dedicated store, opening The Serpent's Key Shoppe & Sanctuary ("The Serpent's Key"). (*Id.* ¶ 14.) The Serpent's Key sells a variety of goods and services, *id.* ¶ 15, and hosts various events "focus[ed] on trauma awareness and healing, wellness, and education," *id.* ¶ 19. The Serpent's Key's primary source of income, however, is tarot card readings. (*Id.* ¶ 20.)

Although Rios alleges that tarot card readings constitute a "spiritual practice" for some, *see id.* ¶¶ 21–22, Rios also alleges that tarot card readings at The Serpent's Key are simply "a form of entertainment." (*Id.* ¶ 22.) Inside The Serpent's Key are conspicuously placed "disclaimer signs" that explain Rios's "tarot card readings are for entertainment and enjoyment purposes and should not be used as professional advice." (*Id.* ¶ 24.)

In October 2023, Rios and The Serpent's Key were featured in a local publication designed to revitalize the economy of Hanover Borough, Pennsylvania ("Hanover"). (*Id.* ¶ 45.) The publication described Rios as "an experienced tarot card reader" and detailed the services The Serpent's Key offers, including the various types of tarot card readings. (*Id.* ¶ 46.)

Following publication of this feature, Rios was visited at The Serpent's Key by Chief Chad Martin ("Chief Martin") and another officer of the Hanover Borough Police Department. (*Id.* ¶ 48.) Rios asked to record the conversation that Chief Martin wanted to have. (*Id.* ¶ 49.) Chief Martin allegedly responded that the conversation could not be recorded. (*Id.*) Believing the conversation could not be recorded, Rios refused to speak with the officers without an attorney. (*Id.* ¶ 50.) Chief Martin continued, nonetheless, allegedly threatening Rios with criminal penalties, pursuant to the Fortune Telling Statute, if Rios continued performing tarot card readings at The Serpent's Key. (*Id.* ¶ 52.)

Following this encounter, Rios's counsel communicated with Hanover about what they believed were "the constitutional shortcomings of the Fortune Telling Statute" and requested that Hanover confirm it would not enforce or threaten to enforce the Fortune Telling Statute against Rios. (*Id.* ¶ 54.) Hanover allegedly responded that it could not and would not confirm that it would not enforce the Fortune Telling Statute upon credible information that Rios was violating it. (*Id.* ¶ 56.)

Rios then sued Hanover and Chief Martin in his official capacity (collectively, "Hanover Defendants"). Rios alleges that the Fortune Telling Statute is unconstitutional both facially and as-applied. As-applied to Rios, the Fortune Telling statute allegedly violates Rios's rights under the First and Fourteenth Amendments. (*Id.* ¶¶ 61–76, 87–96.) Rios's Fourteenth Amendment claim is a substantive due process claim predicated upon an alleged infringement of Rios's "right to choose one's field of private employment and . . . to earn an honest living." (*Id.* ¶ 89.) Facially, the Fortune Telling Statute allegedly violates the First Amendment and is unconstitutionally vague. (*Id.* ¶¶ 77–86, 97–105.) For relief, Rios seeks a declaration that the Fortune Telling Statute is unconstitutional facially and as-applied, as well as a permanent injunction. (*Id.* at 18.)[1]

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

**B. Procedural Posture**

On October 21, 2024, Hanover Defendants moved to dismiss Rios's complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.)  That motion was fully briefed by December 23, 2024, once Rios filed a brief in opposition and Hanover Defendants filed a reply brief.  (Docs. 16 & 26.) On February 4, 2025, Rios filed a "Notice of Constitutional Challenge" pursuant to Federal Rule of Civil Procedure 5.1(a)(1), thereby informing the Attorney General of Pennsylvania ("Pennsylvania Attorney General") of the pending constitutional challenge to the Fortune Telling Statute.  (Doc. 28.)

On April 2, 2025, the Pennsylvania Attorney General moved to intervene in this matter.  (Doc. 31.)  That same day, this case was transferred to the undersigned.  (Doc. 33.)  Upon reviewing the Pennsylvania Attorney General's motion to intervene and the associated briefing, the court granted the motion. (Doc. 38.)[2]  The court also set a deadline for the Pennsylvania Attorney General to file a motion to dismiss.  (*Id.* at 5.)  The Pennsylvania Attorney General timely moved to dismiss Rios's facial challenges to the Fortune Telling Statute, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 42.)  The Pennsylvania

---

[2] The court also certified the constitutional challenge to the Pennsylvania Attorney General, as was its duty under 28 U.S.C. § 2403(b) and Federal Rule of Civil Procedure 5.1(b).  (Doc. 39.)

Attorney General's motion is now fully briefed.  (*See* Docs. 43, 46, 47.)  Both

motions to dismiss are ripe for adjudication.

## JURISDICTION

This § 1983 lawsuit presents a civil-rights dispute arising under the

Constitution of the United States.  Thus, subject matter jurisdiction is vested in this

court pursuant to 28 U.S.C. §§ 1331 & 1343.  This court further has subject matter

jurisdiction over Rios's request for declaratory relief pursuant to 28 U.S.C.

§ 2201(a).  Venue properly lies in this court pursuant to 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other

grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

## DISCUSSION

### A. Standing

Hanover Defendants suggest that at least one of Rios's claims should be

dismissed for lack of standing.  (Doc. 10 ¶ 26; Doc. 11, pp. 22–23.)  This being a

threshold issue, the court addresses first whether Rios has standing to bring the

present claims.  *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)

(quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006))

("Absent Article III standing, a federal court does not have subject matter

jurisdiction to address a plaintiff's claims, and they must be dismissed.").[3]  In doing

so, the court interprets Hanover Defendants to be bringing a facial challenge to

Rios's standing, rather than a factual one.[4]  Accordingly, the court's analysis "must

---

[3] Hanover Defendants' standing argument is nothing more than a brief paragraph that does not
meaningfully engage with the applicable standards.  Indeed, they do not even cite Federal Rule
of Civil Procedure 12(b)(1).  Nevertheless, the court is duty bound to confirm independently that
Rios has standing so as to assure itself that it has subject matter jurisdiction.  *Nuveen Mun. Tr. ex
rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d
Cir. 2012).

[4] A challenge to a court's subject matter jurisdiction can be either facial or factual.  "[A] facial
attack concerns the sufficiency of the pleadings, whereas a factual attack concerns the actual
failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites."
*Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (internal citations and

only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Federal courts are endowed with "[t]he judicial Power of the United States," but that power is limited. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 1). It only extends to "Cases" and "Controversies." *Id.* (quoting U.S. Const. art. III, § 2). This limitation has given rise to the standing doctrine, which developed "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Id.* at 338. In order to have standing to sue, a plaintiff must establish the three elements that constitute the "irreducible constitutional minimum of standing": (1) an actual or imminent injury in fact that is concrete and particularized; (2) a causal connection between the injury and complained-of conduct that is fairly traceable to the defendant; and (3) a likelihood that a favorable decision would redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Hanover Defendants do not contest that Rios has adequately alleged the causation and redressability elements of standing. In any event, there is no doubt

---

quotation marks omitted). Here, Hanover Defendants make no attempt to bring to the court's attention any facts that would defeat Rios's standing. Instead, Hanover Defendants' arguments are expressly based on the assumption that "the allegations in the Complaint are taken as true." (Doc. 11, pp. 22–23.)

that Rios has done so.  Hanover Defendants' threats of prosecution are alleged to be the direct cause of Rios's injuries.  (Doc. 1, ¶ 60.).  And, the declaratory and injunctive relief Rios seeks would eliminate the threats giving rise to the alleged injury.  (*See id.* at 18.)  All Hanover Defendants contest is that Rios has sufficiently alleged the injury-in-fact element.

It is well-settled that the "threatened enforcement of a law [can] create[] an Article III injury."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).  Nevertheless, "threatened enforcement" must be "sufficiently imminent."  *Id.* at 159.  In a pre-enforcement challenge like this one, Rios must allege the following to satisfy the injury-in-fact requirement of standing: (1) an intention to engage in conduct; (2) that the Constitution arguably protects; (3) but the Fortune Telling Statute arguably proscribes; and (4) that Hanover Defendants are credibly threatening to prosecute Rios under the Statute.  *Id.*; *Schrader v. Dist. Attorney of York Cty.*, 74 F.4th 120, 124–25 (3d Cir. 2023).

It is clear that Rios has sufficiently alleged an intention to engage in tarot card reading for entertainment purposes.  Such readings constitute the primary source of income for Rios's business.  (Doc. 1, ¶ 20.)  So, too, Rios has adequately alleged that doing such readings for the entertainment of patrons is speech protected by the First Amendment.  (*See id.* ¶¶ 65–68.)  Hanover Defendants do not contest that Rios has adequately alleged these two requirements.

Rather, Hanover Defendants challenge Rios on the latter two requirements. Hanover Defendants argue that tarot card readings for entertainment are not proscribed by the Statute and, therefore, there is no credible threat of prosecution hanging over Rios. (Doc. 11, pp. 22–23.)  Both arguments are unpersuasive.  Rios has adequately alleged for Article III purposes that the Fortune Telling Statute proscribes tarot card reading for entertainment.  This allegation is supported by the plain meaning of the Statute's text, as explained below.  So, too, Rios has also adequately alleged that there is a credible threat of enforcement.  Chief Martin actually threatened Rios with prosecution; that alone is sufficient to show a credible threat exists for standing purposes.  *Ass'n des Éleveurs de Canards et d'Oies du Que. v. Bonta*, 33 F.4th 1107, 1120 (9th Cir. 2022); *McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1318 n.2 (11th Cir. 2017); *see Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298–99 (1979) (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)) ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court.").  Nevertheless, the existence of a credible enforcement threat is further demonstrated by the fact that Hanover Defendants refused to disavow prosecuting Rios under the Statute after Rios's counsel informed them of Rios's position that the Statute is unconstitutional.  *See Susan B.*

*Anthony List*, 573 U.S. at 165 (finding credible threat of enforcement existed, in part, because "respondents have not disavowed enforcement if petitioners make similar statements in the future."); *Koons v. Platkin*, 673 F. Supp. 3d 515, 582 (D.N.J. 2023) (finding credible threat of enforcement, even though challenged provision of state statute had yet to take effect, when the state did not disavow prosecuting those who violated the provision).

Therefore, given Rios's pleadings, the court has no problem concluding that Rios has satisfied the injury-in-fact element of standing for the alleged claims. Rios consequently has standing.

### B. As-Applied Challenges

Rios brings two as-applied challenges to the Fortune Telling Statute, one under the First Amendment and one under the Fourteenth Amendment on a substantive due process theory.  (Doc. 1, ¶¶ 61–76, 87–96.)[5]  Hanover Defendants move to dismiss these two challenges for the same reason: a failure to allege facts

---

[5] Rios does not specifically allege that the substantive due process claim is an as-applied challenge.  Yet, Rios makes no allegation that the Fortune Telling Statute in all circumstances violates a person's ability to purse a chosen field of private employment.  The complaint simply alleges that the Statute restricts Rios's ability to do so.  Accordingly, the court interprets Rios's due process claim to be an as-applied challenge to the Statute.  *See United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (quoting *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010)) ("On the other hand, '[a]n as-applied attack ... does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'").

adequate to support imposing municipal liability under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), and its progeny.

*Monell* states that municipalities can only be responsible under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes the alleged constitutional injury. 436 U.S. at 694. Rios has sued a municipality and its police chief in his official capacity. Thus, the limits of *Monell* apply to Rios's as-applied challenges. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (recognizing no distinction between official-capacity claims brought against municipal official and claims brought against the municipality itself); *Porter v. City of Philadelphia*, 975 F.3d 374, 391 (3d Cir. 2020) ("While [plaintiff] may bring an as-applied challenge to a facially constitutional policy, such a challenge remains subject to the constraints of *Monell*."). Accordingly, Rios's as-applied challenges can survive only upon allegations that a policy or custom of Hanover caused Rios's alleged injuries.

A policy is distinct from a custom, and Rios can premise the as-applied challenges on either or both. As the Third Circuit has explained:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state

officials [are] so permanently and well-settled' as to virtually constitute law.

*McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  It is not readily apparent from the complaint what policy or custom are allegedly at issue here.  In briefing, Rios argues that the complaint sufficiently alleges an official policy in two ways.

First, Rios argues that the allegations concerning Chief Martin's actions are sufficient to establish a municipal policy because Chief Martin is a final policymaker.  (Doc. 16, p. 20.)  It is true that the actions of municipal officials who possess final policymaking authority may subject a municipality to § 1983 liability.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  Yet, nowhere in the complaint does Rios allege that Chief Martin is a final policymaker for Hanover.  Making such a contention for the first time in a brief in opposition does not suffice.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010) (explaining that plaintiff had an "obligation to plead in some fashion that [a police chief] had final policy making authority, as that is a key element of a *Monell* claim"); *see also Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)) ("[I]t is

axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")[6]

Second, Rios argues that the complaint adequately alleges that Hanover had an official policy of enforcing the Fortune Telling Statute. (Doc. 16, p. 20.) This begs the question whether a municipal policy of simply enforcing state law is a policy that gives rise to *Monell* liability. This question has generated a circuit split. *See Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854 F. App'x 521, 530 (4th Cir. 2021) (collecting cases.) The Third Circuit has stated that "when a [local government] is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the *Monell* line of cases." *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999). The *Doby* court went on to observe that a local government might be liable under *Monell* if it "ha[s] some discretion in deciding how to implement" state law. *Id.* at 869. The

---

[6] Given Rios's pleading failure, the court need not decide at this point whether Chief Martin is a final policymaker as a matter of Pennsylvania law. Nevertheless, the court observes that caselaw warns against simply assuming Chief Martin is a final policymaker solely because he is a municipal chief of police. *See Praprotnik*, 485 U.S. at 123, 126 (explaining that "whether a particular official has 'final policymaking authority' is a question of *state law*" and that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it"); *Santiago*, 629 F.3d at 135 n.11 (stating that "as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker"); *Kocher v. Larksville Borough*, 926 F. Supp. 2d 579, 606 (M.D. Pa. 2013) ("*Santiago* instructs against the presumption that all municipal police chiefs in the Commonwealth [of Pennsylvania] are final policymakers.").

application of *Doby* in two cases involving the Pennsylvania Mental Health

Procedures Act ("MHPA") is instructive here.

In *Smith v. Pennsylvania*, the plaintiff sued a township, among others, after

its police officers executed a warrant for an involuntary psychiatric evaluation that

was issued pursuant to the MHPA.  Civil No. 21-5473, 2022 WL 3139854, at *2

(E.D. Pa. Aug. 4, 2022), *aff'd*, No. 22-2632, 2023 WL 3336642 (3d Cir. May 10,

2023).  That plaintiff did not allege any municipal policy of enforcing the MHPA

in a distinctive way.  *Id.* at * 7.  Instead, the district court determined that "the

'policy' identified [was] nothing more than the [t]ownship's enforcement of the

MHPA."  *Id.*  Therefore, the district court found that no *Monell* liability could

attach.  *Id.*  The Third Circuit affirmed.

Conversely, the Third Circuit found that *Monell* liability could attach when a

municipality adopted a policy of enforcing state law that showed some exercise of

discretion by the municipality.  *Guilday v. Crisis Ctr. at Crozer-Chester Med. Ctr.*,

No. 22-1519, 2022 WL 17484328, at *2 (3d Cir. Dec. 7, 2022).  In *Guilday*, the

appellant alleged that the county "ha[d] a policy allowing [MHPA] warrants to be

valid from 30 days after issuance," even though "[t]he MHPA does not provide

that warrants are valid 30 days after they are issued—or, indeed, contain any

explicit requirements about the time in which to execute a warrant."  *Id.* at *1

(original emphasis omitted).  On these allegations, the appellant had not merely

15

alleged a policy of enforcing state law, but rather a policy of enforcing state law in a distinctive way. *See id.* at *2.

Here, Rios has not alleged any facts to suggest that Hanover has a policy of enforcing the Fortune Telling Statute in a distinctive way. Nor does Rios argue in briefing that Hanover had such a policy. In fact, Rios seemingly acknowledges that the complaint simply alleges "that Hanover has an official policy of enforcing the Fortune Telling Statute." (Doc. 16, p. 20.) Without some distinctive element, such a policy is not sufficient, under Third Circuit precedent, to establish municipal liability for § 1983 claims.

For the reasons stated above, Rios has failed to satisfy *Monell*. The court, therefore, must dismiss Rios's as-applied challenges to the Fortune Telling Statute. The dismissal will be without prejudice, because the court cannot conclude that amendment would be futile or inequitable. *See G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.")

### C. Facial First Amendment Challenge

Hanover Defendants and the Pennsylvania Attorney General all move for dismissal of Rios's facial First Amendment challenge to the Fortune Telling

Statute.  Based on the Movant's arguments, the court must proceed in two steps.

First, the court must determine if Hanover Defendants are proper defendants for

Rios to bring a facial challenge to a state statute against.  Second, the court must

determine whether the Fortune Telling Statue is merely a prohibition against

fraudulent conduct, which is unprotected by the First Amendment.

### 1. Proper Defendants

Hanover Defendants argue that Rios's facial challenges to the Fortune

Telling Statute should be brought not against them, but against the government that

enacted the law, *i.e.*, Pennsylvania.  (Doc. 11, pp. 21–22.)  Hanover Defendants'

implied position is that a facial challenge to a statute may only be brought against

the government that enacted the law.  (*See id.*)  To support this proposition,

Hanover Defendants cite one authority, Federal Rule of Civil Procedure 5.1(a).

(*Id.*)  That rule specifies when a party must give notice to the federal or a state

government when "a pleading, written motion, or other paper draw[] into question

the constitutionality of a federal or state statute."  Fed. R. Civ. P. 5.1(a).

Hanover Defendants' position is unconvincing for two reasons.  First, as

Rios astutely observes, Doc. 16, p. 26, the very existence of Rule 5.1(a) suggests

that constitutional challenges to state laws can be raised even when the state or one

of its officers is not a party.  *See* Fed. R. Civ. P. 5.1(a)(1)(B).  Second, as the

parties appear to agree, the Third Circuit has previously intimated that a plaintiff

may bring a facial challenge against local governments under appropriate circumstances. (Doc. 16, p. 27; Doc. 26, p. 5.) Specifically, the Third Circuit has explained that "[a] plaintiff challenging the validity of a state statute may bring suit against the official who is charged with the statute's enforcement only if the official has either enforced, or threatened to enforce, the statute against the plaintiff[]." *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993).

Nevertheless, Hanover Defendants attempt to distinguish *1st Westco Corp.* from the present matter. In doing so, they seemingly take the position that *1st Westco Corp.* requires two conditions be satisfied in order for a local government or its officials to be proper defendants in a facial challenge to a state statute: They must (1) have actually enforced the statute in question and (2) have exclusive authority to enforce the statute. Hanover Defendants contend they are not proper defendants here since they satisfy neither of these conditions. (Doc. 26, pp. 5–6.) The court disagrees.

The first purported condition is no condition at all. Neither the holding of *1st Westco Corp.* nor ordinary justiciability principles require actual enforcement of a state statute before a plaintiff may challenge it. Instead, that case explicitly contemplates challenges where an official "threatened to enforce[] the statute." *1st Westco Corp.*, 6 F.3d at 113.

The second purported condition is similarly a fabrication of Hanover Defendants' own making.  In *1st Westco Corp.*, the Third Circuit held that Pennsylvania's Attorney General and Secretary of Education were not proper defendants in a lawsuit challenging a state statute that directed school districts to hire Pennsylvania residents for construction projects on school buildings.  *Id.* at 116.  Critical to the Third Circuit's analysis was the determination that those state officials had *no* statutory authority to enforce the statute in question specifically with respect to the defendant, the School District of Philadelphia.  *See id.* at 113.  That school district held a special place in the statutory regime.  Whereas the Pennsylvania Secretary of Education had the power to review and approve specifications of projects with respect to every other school district in Pennsylvania, the Secretary had no such powers over projects in the School District of Philadelphia.  *Id.* at 112.  The Pennsylvania Attorney General similarly had no power to enforce the statute with respect to the School District of Philadelphia or to issue "binding opinion[s] concerning the statute to th[at] School District."  *Id.* at 113.  The Third Circuit's reasoning does not suggest that exclusive authority to enforce a statute is a necessary condition for a local government or its officials to be the proper defendants for a facial constitutional challenge to a statute.  It merely suggests that an official with no power to enforce a statute is not a proper defendant for such a challenge.  Unlike the state officials in *1st Westco*

19

*Corp.*, Hanover has the power, through its municipal police, to enforce the Fortune Telling Statute.  *See* 42 Pa. Con. Stat. § 8952 (providing municipal police the power to enforce Pennsylvania law).  Given this power, the court finds that Hanover Defendants are proper defendants here.

### 2.  The Fortune Telling Statute's Scope

The court now must determine whether the Fortune Telling Statute only prohibits fraudulent conduct.  Under the First Amendment, as applied to the states by the Fourteenth Amendment, a state "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)).  Laws that regulate speech based on its content are presumptively unconstitutional.  *Id.*; *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).  On the other hand, false statements "made to effect a fraud or secure moneys or other valuable considerations" are not afforded First Amendment protection.  *United States v. Alvarez*, 567 U.S. 709, 723 (2012); *accord United States v. Hansen*, 599 U.S. 762, 783 n.4 (2023); *accord Illinois ex rel. Madigan v. Telemarking Assocs., Inc.*, 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud.")

Whether the Fortune Telling Statute is a content-based regulation of speech or strictly a prohibition on fraudulent conduct is the key interpretive dispute

between the parties. Rios argues the former, insisting that the Statute criminalizes fortune telling whether done by a fraudster with odious intent or by a performer for the innocuous entertainment of others. (*See* Doc. 16, p. 15.) Conversely, Movants argue the latter, insisting that the Statute's prohibitions do not reach non-fraudulent performative expression. If Movant's interpretation is correct, then the Fortune Telling Statute would not run afoul of the First Amendment. *See Alvarez*, 567 U.S. at 723; *Illinois ex rel. Madigan*, 538 U.S. at 612. If Rios's interpretation is correct, then there would be little doubt that the Statute is a content-based regulation of speech. *Cf. Argello v. City of Lincoln*, 143 F.3d 1152, 1152 (8th Cir. 1998) (finding an ordinance that banned, *inter alia*, carrying on a fortunetelling business was a "content-based regulation of speech"); *Trimble v. City of New Iberia*, 73 F. Supp. 2d 659, 666–67 (W.D. La. 1999) ("The Court finds that the Ordinance does indeed prohibit speech based on its content, namely speech that involves fortunetelling, palmistry, reading futures and the like."); *Nefedro v. Montgomery County*, 996 A.2d 850, 855 (Md. 2010) ("In our view, the Fortunetelling Ordinance does regulate speech."). Therefore, for Movants' motions to succeed, the court must conclude that the Fortune Telling Statute, as a matter of law, only prohibits fraudulent conduct. The court cannot do so at this point.

### i. Statute's Text

The court must start by determining what the Fortune Telling Statute prohibits. *Broadrick v. Oklahoma*, 413 U.S. 601, 617 n.16 (1973). Most significant in this endeavor is the plain meaning of the Statute's text at the time of its enactment. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018). The portion of the Statute most relevant to Rios's lawsuit is the following:

> A person is guilty of a misdemeanor of the third degree if he pretends for gain or lucre, to tell fortunes or predict future events, by cards, tokens, the inspection of the head or hands of any person, or by the age of anyone, or by consulting the movements of the heavenly bodies, or in any other manner . . . .

18 Pa. Con. Stat. § 7104(a). Nothing in the Statute's text explicitly cabins the Statute's scope to instances of fraud, *i.e.*, clairvoyance done with an intent to deceive a gullible patron for gain. So long as one "pretends for gain or lucre, to tell fortunes or predict future events," that person is guilty of a misdemeanor. *Id.*

Movants' interpretation of the Statute can only be correct if the word "pretend" necessarily connotes an action done for the purpose of deceiving another. Otherwise, the Statute's text plainly would reach many forms of harmless fortune-telling expression done for those who know they are not witnessing real divinations.

The Statute itself does not define "pretend." Therefore, the court must look to definitions contemporaneous to the time Pennsylvania enacted the Fortune

22

Telling Statute.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 331

(3d Cir. 2022) ("[D]ictionaries from the time of a statute's enactment illuminate an

undefined term's common and approved meaning."); *Delaware County v. Fed.*

*Hous. Fin. Agency*, 747 F.3d 215, 221 (3d Cir. 2014) (quoting *Eid v. Thompson*,

740 F.3d 118, 123 (3d Cir. 2014)) ("When words are left undefined, we have

turned to 'standard reference works such as legal and general dictionaries in order

to ascertain' their ordinary meaning.")

The definitions reviewed by the court strongly suggest that "pretend" did not

necessarily mean an action done with a purpose to deceive another.  Indeed, under

contemporaneous definitions, one could pretend by "put[ting] in a claim, truly or

falsely" or by "hold[ing] out the appearance of being, possessing, or performing."

*Pretend*, *Webster's An American Dictionary of the English Language* (1860);

*accord Pretend*, *Webster's An American Dictionary of the English Language*

(1851).  So, too, one could pretend by "simulat[ing] in words or actions" or by

"profess[ing], mak[ing] believe."  *Pretend*, *Webster's Practical Dictionary* (1884).

Surely, the contemporaneous meaning of "pretend" included a subset of actions

done with fraudulent intent.  To pretend was also understood to mean to "sham,"

*Pretend*, *A New and Comprehensive Dictionary of the English Language: as*

*Spoken and Written* (2d ed. 1861), to "represent falsely," and to "show

hypocritically or for the purpose of deceiving."  *Pretend*, *Webster's Practical*

23

*Dictionary* (1884). But, these contemporaneous definitions show that "pretend" simply was not so narrowly understood to mean that one can pretend *only* by engaging in fraud.[7] Accordingly, the plain text of the Statute is clear; the Statute's prohibitions are unambiguously not limited to fraudulent conduct.

### ii. Limiting Construction from State Authority

The court's textual analysis, however, is not dispositive. When considering "a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). Movants argue that the Pennsylvania Superior Court has provided judicial constructions of the Fortune Telling Statute that limit its scope to fraudulent conduct.

Movants first cite *Commonwealth v. Blair*, 92 Pa. Super. 169 (1927). In that case, the defendant was an assistant minister of a church and held himself out as a religious healer. *Id.* at 171. The defendant purported to treat people through acts

---

[7] The court independently searched for contemporaneous Pennsylvania legal authority that might shed light on the meaning of "pretend" in this context. The search yielded one interesting, yet not-all-that-helpful result. In 1887, the Pennsylvania Court of Common Pleas in Philadelphia determined that a plaintiff had adequately alleged a libel claim against a defendant who allegedly called her a "witch" in Polish. *Wisa v. Lewandouski*, 19 Week. Notes Cas. 158, 158 (Pa. Ct. Com. Pl. 1887). The plaintiff alleged that the defendant's statement was libel *per se*, because the insult insinuated that Plaintiff was violating the Fortune Telling Statute. *Id.* The court overruled the defendant's demurrer to the plaintiff's claim, permitting the case to move past the pleading stage. *Id.*

that "assumed the usual attitude of prayer." *Id.* at 170.  The defendant was

eventually charged and convicted under the Fortune Telling Statute.  The

Pennsylvania Superior Court vacated the judgment, holding that the Statute was

not passed "to restrain such religious organizations from putting in practice their

beliefs in this regard." *Id.* at 171.  *Blair* might represent a limiting construction

with respect to religious practice.  But, that does little to advance Movants' cause.

This is because the *Blair* court's limiting construction plainly concerned the nature

of the expression, not the intent of the speaker.  *Blair* makes clear that the

defendant's expression was outside the scope of the Fortune Telling Statute

irrespective of whether he actually believed he could heal or not.  As the *Blair*

court explained:

> [The defendant] assumed the usual attitude of prayer and very evidently
> was under the impression that he had (or at least pretended that he had)
> power to heal given to him from a higher source.  We cannot determine
> whether he was sincere.  There are pretenders in every form of religion.
> We must accord to anyone the right to believe and assert that prayer
> will heal the sick.  There are thousands of people who resort to religious
> healers for the cure of disease and contribute money to those who
> minister to them for such purpose.

*Id.*  Nowhere does the *Blair* court interpret the Statute to prohibit only fortune-

telling expression done with fraudulent intent.  At most, the court interpreted the

Statute to exclude religious expression. Thus, the court does not agree with

Movants that *Blair* provides the limiting construction they think it does.[8]

Next, Movants cite *Commonwealth v. Viscount*, 179 A. 858 (Pa. Super. Ct.

1935). In that case, the defendant was convicted of two counts of fortune telling.

*Viscount*, 179 A. at 858. With respect to one count of conviction, a man and

woman were star-crossed lovers whose parents objected to them being together and

forbade them from visiting each other's houses. *Id.* at 604. The woman fell ill and

learned that the defendant could cure her. *Id.* The defendant read the woman's

fortune and told her that the mother of the woman's lover "had cast a spell on her."

*Id.* The woman agreed to pay $32 for the defendant to remove said spell. *Id.* at

605. With respect to the other count of conviction, the defendant told a woman her

fortune, which revealed that a spell had purportedly been cast upon the woman and

that someone in the woman's house would die. *Id.* The woman then paid the

defendant $100 for the fortune as well as information about how she could break

the spell. *Id.* In upholding the defendant's conviction, the Superior Court stated

that the Fortune Telling Statute "is a very meritorious one, designed to protect the

---

[8] The Pennsylvania Attorney General similarly relies on *Commonwealth v. O'Malley*, 81 Pa. Super. 100 (1923). Like *Blair*, however, *O'Malley* suggests, at most, that the Fortune Telling Statute does not criminalize religious expression. *See O'Malley*, 81 Pa. Super. at 104 ("The question whether the defendant was conducting a church or was merely using the alleged organization to get unsuspecting persons to patronize her for the purpose of having their fortunes told was clearly submitted to the jury and no exception was taken to the charge.").
.

ignorant, superstitious, and credulous who, like the poor, are always among us." *Id.*

The court disagrees with Movants that *Viscount* strongly suggests that conviction under the Fortune Telling Statute requires a showing of fraud. The Superior Court simply found that Pennsylvania sufficiently charged and proved that the *Viscount* defendant was fraudulent in violating the Statute. *See id.* That does not mean the *Viscount* court determined that fraud is a necessary element of the Statute. Moreover, while the Pennsylvania Attorney General places much weight on the Superior Court's pronouncement of what the Statute was designed to do, Doc. 43, pp. 5–6, this court does not. Such purpose statements cannot change the fact that the Statute's original plain meaning unambiguously has a broader scope than instances of fraud. *See Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010) ("Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history."); *see also* 1 Pa. Con. Stat. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.") Accordingly, *Viscount*, too, does not offer the limiting construction that Movants think it does.

### iii. Uniform Limiting Practice

Even without a limiting judicial construction, however, the court must also read the Statute in light of "a well-understood and uniformly applied practice . . . that has virtually the force of a judicial construction," if one exists. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988).  The Pennsylvania Attorney General makes no argument that such a practice exists.  Hanover Defendants argue that the Statute has only been enforced against those believed to be committing fraud.  (Doc. 26, p. 10.)  In support of this proposition, Hanover Defendants cite a legal article that details three prosecutions under the Fortune Telling Statute, one from 1999 and two from 2015, all of which seem to have involved fraud.  Emeline E. K. Decker, *Fines and Portents: Pennsylvania's Criminalization of Fortune-Telling and Magical Rituals*, 42-DEC PA. LAW. 22, 29 (2020).

These three prosecutions alone and in isolation do not definitively establish that any "well understood and uniformly applied practice" exists, let alone one "that has virtually the force of a judicial construction." *City of Lakewood*, 486 U.S. at 770 n.11.  But, the court cannot say at this stage of litigation that no such practice exists.  Such a fact-specific question would benefit from a more fulsome record before resolution.  If Movants were to provide convincing evidence of a well-established practice of enforcing the Fortune Telling Statute only against

those committing fraud, the court would entertain such evidence at the appropriate juncture.  For now, Hanover Defendants' arguments is not sufficient to dismiss Rios's facial challenge to the Statute.

### iv. Constitutional-Avoidance Doctrine

Finally, the court recognizes that even absent any established limiting construction or practice, the court must still "presume any narrowing construction or practice to which the law is 'fairly susceptible.'"  *Id.*; *accord* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 247 (2012) ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt.")  Nevertheless, the so-called constitutional-avoidance doctrine does not give this court license to rewrite statutes.  *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 539 (3d Cir. 2012).  "[D]oing so would constitute a serious invasion of the legislative domain and sharply diminish [a legislature's] incentive to draft a narrowly tailored law in the first place."  *United States v. Stevens*, 559 U.S. 460, 481 (2010) (internal citations and quotation marks omitted).  The court does not believe that the original plain meaning of the Statute is "fairly susceptible" to the narrow interpretation for which Movants advocate.  As noted above, the contemporaneous definition of "pretend" included much more than just "fraud."  Interpreting the Statute in the manner suggested by Movants would require the court to ignore too many accepted meanings of "pretend."

29

Accordingly, Movants' general reliance on the constitutional-avoidance doctrine is unavailing.

Based on the foregoing analysis, the court is unconvinced at this time that the Fortune Telling Statute prohibits only fraudulent conduct. Since Movants provide no other challenge to Rios's allegation that the Statute is a content-based regulation of speech, the court will not dismiss count II of the complaint.

### D. Facial Vagueness Challenge

Movants also seek dismissal of Rios's vagueness claim. Vague statutes implicate two due process requirements: (1) "regulated parties should know what is required of them so they may act accordingly"; and (2) "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). A void-for-vagueness challenge will succeed when a party shows that a statute's vagueness makes it so that either of these two due process requirements is not satisfied. *Kreimer v. Bureau of Police for Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992). Moreover, "[t]he vagueness" of speech regulations "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ACLU*, 521 U.S. 844, 871–72 (1997). Thus, "rigorous adherence to" these two due process "requirements is necessary to ensure that ambiguity does not chill protected speech." *Fox Television Stations*, 567 U.S. at 253–54.

Rios alleges that the Statute's use of "pretend" both fails to provide adequate notice of what the Statute proscribes and encourages arbitrary and discriminatory enforcement. (Doc. 1, ¶¶ 100–04.) Movants challenge Rios on both allegations. With respect to arbitrary enforcement, Movants recycle their arguments. They contend that the Fortune Telling Statute prohibits only fraud and, therefore, includes a *mens rea* element that protects against arbitrary enforcement. (*See* Doc. 11, pp. 24–25; Doc. 43, pp. 13–14.) That contention fails for the reasons already explained at length. Movants offer no other argument as to why Rios's vagueness claim should fail on the arbitrary-enforcement theory. Accordingly, Rios's vagueness claim can proceed on at least the arbitrary-enforcement theory. Since this claim will proceed regardless of the merits of Rios's adequate-notice theory, the court need not analyze that theory at this stage.

CONCLUSION

For the reasons stated herein, the court will deny the Pennsylvania Attorney

General's motion to dismiss and grant in part and deny in part Hanover

Defendants' motion to dismiss.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 28, 2025