# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REBECCA RIOS,

       *Plaintiff*,

v.

CHAD E. MARTIN, in his official capacity as Chief of the Hanover Borough Police Department and HANOVER BOROUGH, PENNSYLVANIA,

       *Defendants*.

Civil Action No. 1:24-CV-01399

## PLAINTIFF'S BRIEF IN OPPOSITION TO THE ATTORNEY GENERAL'S MOTION TO PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT

Alexa L. Gervasi (PA 334530)
**COBB & JOHNS PLLC**
13341 W. US-290, Building 2
Austin, Texas 78737
512-399-3150
512-572-8005 fax
alexa@cobbjohns.com

*Counsel for Plaintiff Rebecca Rios*

1

## TABLE OF CONTENTS

Introduction ...................................................................................................... 1

Relevant Background and Procedural History ........................................................ 1

Standard of Review .............................................................................................. 5

Argument ............................................................................................................ 8

    I.   This Court was not required to conduct an *Erie* analysis. ........................... 8

    II.  The Fortune Telling Statute cannot be reasonably interpreted to prohibit only fraud. ............................................................................................... 10

    III. The purpose of the Fortune Telling Statute is to demonize witchcraft, not protect against fraud. ............................................................................. 12

    IV. The Attorney General has no authority to conclude that fortune-telling is necessarily false. ..................................................................................... 13

    V.  The Attorney General's newfound interpretation of the Fortune Telling Statute cannot save the law. ...................................................................... 14

Conclusion ......................................................................................................... 17

## INTRODUCTION[1]

The Pennsylvania Attorney General asks this Court to reverse its prior ruling and rewrite an antiquated law founded in bigotry and bias to save it from further judicial review. The law does not permit such a result.

As this Court has already held, the Fortune Telling Statute cannot be readily narrowed to redefine "pretend" to mean *only* "fraud." To the contrary, this Court has painstakingly outlined that the plain, ordinary meaning of "pretend" encompasses far more than fraudulent actions, such that the Court cannot fairly narrow its meaning to avoid Beck's facial claims.

This Court's prior ruling should stand, and the Attorney General's Motion should be denied.

### RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Enacted in 1861, Pennsylvania's Fortune Telling Statute defines that:

A person is guilty of a misdemeanor of the third degree if he *pretends* for gain or lucre, to tell fortunes or predict future events, by cards, tokens, the inspection of the head or hands of any person, or by the age of anyone, or by consulting the movements of the heavenly bodies, or in any other manner . . . .

---

[1] Beck expressly incorporates by reference all law, arguments, and defined terms set forth in their Opposition to Hanover's Motion to Dismiss, *see* ECF No. 16, and Opposition to the Attorney General of Pennsylvania's Motion to Dismiss, *see* ECF No.46.

18 Pa. Con. Stat. Ann. § 7104(a) (the "Fortune Telling Statute") (emphasis added).

A misdemeanor in the third degree, violators of this statute face up to a year in prison and a $2500 fine *per violation*. *Id.* at §§ 1101, 1104. Although this statute, with its steep penalties, hinges on whether the speaker "pretends" to tell fortunes or predict the future, the law does not define the term "pretend." Instead, with vague, undefined terms, it seeks to regulate the content of individuals' speech, and it does so without any limiting principles or a compelling governmental interest.

After Chief Chad E. Martin of the Hanover Police Department threatened to enforce this law against Plaintiff Rebecca "Beck" Rios, Beck filed suit, arguing that the Fortune Telling Statute violates the First and Fourteenth Amendments to the U.S. Constitution, both facially and as applied. *See* ECF No. 1. In response, Hanover filed a motion to dismiss all of Beck's claims. *See* ECF Nos. 10–11. The Attorney General then intervened and filed his own motion to dismiss Beck's facial challenges to the Fortune Telling Statute. *See* ECF Nos. 42–43. As relevant here, the Attorney General argued that Beck's facial challenges should be dismissed because, the Attorney General claimed, the Fortune Telling Statute is only used to prohibit fraud, which is not protected speech. *See generally* ECF No. 43.

2

On August 28, 2025, this Court issued its Memorandum (ECF No. 48) and Order (ECF No. 49), granting in part and denying in part Hanover's motion to dismiss.[2] The Court denied the Attorney General's motion in its entirety.

In a 15-page analysis, this Court directly engaged with the Attorney General's arguments regarding the scope and application of the Fortune Telling Statute. In direct response to the Attorney General's argument that "pretend" necessarily refers to deceit, this Court provided a thorough analysis of the plain, ordinary meaning of the term. *See* ECF 48 at 22–24. Acknowledging that "pretend" can also *encompass* fraudulent activity, the Court determined, based on contemporaneous definitions, "that 'pretend' simply was not so narrowly understood to mean that one can pretend *only* by engaging in fraud." *Id.* at 24 (emphasis in original). Therefore, this Court held, "the plain text of the Statute is clear; the Statute's prohibitions are unambiguously not limited to fraudulent conduct." *Id.*

Identifying the applicable law, the Court then recognized its obligation to "consider any limiting construction that a state court or enforcement agency has

---

[2] The Court granted Hanover's motion with respect to its challenges to Beck's as-applied claims, finding that Beck had not sufficiently alleged a policy or practice, as required to state a *Monell* claim. The Court granted Beck leave to amend. Following amendment, Hanover did not challenge the plausibility of Beck's as-applied challenges and, instead, answered Beck's First Amended Complaint. *See* ECF No. 61.

proffered." *Id.* (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982)). The Court then analyzed the Attorney General's evidence of limiting constructions—judicial opinions—and determined that prior Pennsylvania caselaw did not do the work that the Attorney General claimed or needed to overcome Beck's facial challenges. *Id.* at 27.

This Court went further still to address whether a uniform limiting practice existed to narrow the meaning of the Fortune Telling Practice, offering an argument that even the Attorney General had not raised. *Id.* at 28. This Court determined that the record was not sufficient to show such a uniform practice, requiring "a more fulsome record before" this "fact-specific question" could be resolved. *Id.*

Finally, this Court directly addressed the Attorney General's constitutional-avoidance argument, recognizing that courts must "presume any narrowing construction or practice to which the law is 'fairly susceptible.'" *Id.* at 29 (internal quotation omitted). This Court determined, however, that it could not narrow the Fortune Telling Statute without "ignor[ing] too many accepted meanings of 'pretend'" and "rewrit[ing the] statute." *Id.* at 29–30.

4

Based on this analysis, the Court concluded that it could not read the Fortune Telling Statute to prohibit only fraudulent conduct and, in turn, declined to dismiss Beck's facial challenges. *Id.* at 30–31.[3]

With the Court's permission, Beck amended their Complaint to provide additional allegations in support of their as-applied claims. *See* ECF No. 58. In response, Hanover—the party who originally challenged Beck's as-applied claims—filed an answer. The Attorney General, however, filed the present Motion to Dismiss, reasserting and asking this Court to reconsider the same arguments raised in his first motion to dismiss Beck's facial challenges. *Compare* ECF No. 43, *with* ECF No. 60.

The Attorney General's arguments must fail for the same reasons set forth in the Court's August 28 Memorandum.

### STANDARD OF REVIEW

The Attorney General has filed a Motion to Dismiss against Beck's First Amended Complaint ("FAC"). *See* ECF No. 60. To support this filing, the Attorney General states that Beck's "Amended Complaint rendered the original Complaint a nullity." *Id.* at 2 n.2 (internal quotation omitted) (cleaned up). Betraying his position, the Attorney General acknowledges that the present Motion addresses the same

---

[3] The Court noted that the Attorney General's challenge to Beck's Fourteenth-Amendment vagueness claim (a facial Due Process claim) fails for the same reasons as his challenge to their First Amendment claim. ECF No. 48 at 31.

arguments as his original Motion to Dismiss, going so far as to state that "the Attorney General's argument remains the same—namely, that the Fortune-Telling Statute should be interpreted as prohibiting only fraud, and that such an interpretation disposes of all facial constitutional challenges." *Id.* at 2–3 n.3. This Court, therefore, must strike the Attorney General's filing as a prohibited successive motion to dismiss. *See* Fed. R. Civ. P. 12(g)(2). By the Attorney General's own admission, the present Motion is based entirely on arguments that were available in its motion to dismiss Beck's original Complaint.[4] *Compare* ECF No. 42, *with* ECF No. 60. A second motion to dismiss is, therefore, procedurally barred. *See, e.g.*, *Diehl v. SWN Prod. Co., LLC*, 2022 WL 3371327, at *8 (M.D. Pa. Aug. 16, 2022) (refusing to consider arguments raised in second motion to dismiss that could have been asserted in a motion to dismiss against the original complaint).

Admitting the impropriety of this second Motion to Dismiss, the Attorney General asks this Court to apply the "clearly erroneous" standard of review. *See* ECF No. 58 at 3 n.4. Without using the words, the Attorney General is asking this Court

---

[4] As the Attorney General notes, the only relevant change in Beck's FAC was the clarification that Beck's economic-liberty challenge is both facial and as applied. This clarification cannot support a new motion to dismiss. The Attorney General's first motion to dismiss "assumed that Rios was bringing both facial and as-applied challenges under . . . the Due Process Clause," and the FAC did not provide the Attorney General with any new defenses or objections that were not previously available. ECF No. 60 at 2–3 n.3.

to reconsider its prior ruling upholding Beck's facial challenges. Although this Court's Local Rules allow motions for reconsideration, *see* Loc. R. 7.10, "the purpose of the motion for reconsideration is not to rehash arguments already briefed." *Adkins v. Rumsfeld*, 470 F. Supp. 2d 445,447 (D. Del. 2007) (internal quotation omitted). A party seeking reconsideration must show (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *See Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).

Here, the Attorney General seeks reconsideration under the third prong, arguing that this Court made a clear error of law in declining to redefine "pretend" to mean only "fraud." *See* ECF No. 6 at 3 n.4. In filing motions for reconsideration, an extraordinary form of relief that "should be granted sparingly," "parties are not free to relitigate issues the court has already decided." *Geneva College v. Sebelius*, 929 F. Supp. 2d 402, 452 (W.D. Pa. 2013); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (noting that motion for reconsideration "may not be used to relitigate old matters"). Motions for reconsideration are "not properly grounded in a request for a district court to rethink a decision it, rightly or wrongly, has already made," nor are they justified by "simply a point of disagreement between the Court and the litigant." *Id.* (quoting *Waye v. First Citizen's Nat'l Bank*, 846 F. Supp. 310,

313–14 (M.D. Pa. 1994), *aff'd* 31 F.3d 1175 (3d Cir. 1994)). As the Middle District of Pennsylvania has recognized, a motion that "raises no new issues of merit" does not warrant reconsideration. *Waye*, 846 F. Supp. at 314.

Because the Attorney General's Motion does no more than relitigate matters already addressed at length and decided by this Court, "there is no need to revisit those issues," *id.*, and the Motion should be denied.

## ARGUMENT

The Attorney General asks this Court to reconsider the law of this case based on nothing more than his own disagreement with the Court's prior decision. Not only is this effort procedurally barred, it is also substantively unsupported. The Attorney General has not offered any law or facts that would enable this Court to redefine "pretend" to mean *only* "fraud."

## I.    This Court was not required to conduct an *Erie* analysis.

The Attorney General's entire Motion stems from the statement—presented in its original motion to dismiss, *see* ECF No. 43 at 4 & n.3—that this Court was "required to 'predict how the Pennsylvania Supreme Court would interpret' the Fortune-Telling Statute 'if presented with th[is] case.'" ECF No. 60 at 3 (quoting *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)) (alteration in original). Not only is this simply a relitigation of the Attorney General's previous argument, but *Nationwide* is wholly inapplicable to the present dispute. *Nationwide*

concerns a court's requirement to apply the *Erie* doctrine in diversity cases. *See* 230 F.3d at 637 ("The District Court, exercising diversity jurisdiction in this declaratory judgment action, was obliged to apply the substantive law of Pennsylvania."). This is not a diversity case, and *Nationwide* does not concern a challenge to a state law under the U.S. Constitution. *See id.*

In a case such as this one, where a party raises a federal constitutional challenge to a state law, a federal court must first determine the scope of the statute based on the plain meaning of the text. *See United States v. Stevens*, 559 U.S. 460, 474 (2010). If the meaning remains unclear, the court must then determine whether the statute "has been authoritatively construed by the relevant State's highest court." *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 167 (W.D. Pa. 2011) (citing *New York v. Ferber*, 458 U.S. 747, 769, n. 24 (1982). If it has, the "federal court is bound by that construction in determining whether the statute violates the Constitution." *Id.* If the State's highest court has *not* authoritatively construed the relevant statute, however, the federal court's obligation is to "presume any narrowing construction or practice to which the law is fairly susceptible." *Id.* (quoting *Brown v. City of Pittsburgh*, 586 F.3d 263, 274 (3d Cir. 2009)).

This is precisely the analysis that this Court undertook in ruling against the Attorney General's prior challenge to Beck's facial claims against the Fortune Telling

9

Statute. Under this required analysis, this Court has already determined that (1) the unambiguous meaning of "pretend" applies to non-fraudulent activities; (2) there is no authoritative construction from Pennsylvania's high court; and (3) the Fortune Telling Statute is not fairly susceptible to a limiting instruction. This prior ruling—the law of this case—controls.

## II. The Fortune Telling Statute cannot be reasonably interpreted to prohibit only fraud.

Unwilling to accept this Court's ruling, the Attorney General reargues that any ambiguity in the Fortune Telling Statute can be reasonably resolved by interpreting "pretend" to refer to only "fraud."[5] Once again, this Court has already reviewed and rejected this argument. And for good reason.

---

[5] The Attorney General appears to recycle this argument again in its fourth point, arguing that the Court should "'*look beyond* the language of the statute if [its] plain meaning would lead to 'unconstitutional results.'" ECF No. 60 at 7 (quoting *Gilbert v. Synagro Cent., LLC*, 634 Pa. 651, 680 (2015)) (emphasis in original) This argument fails for the same reasons. By the Attorney General's own admission, this argument is simply a rehashing of its prior motion, it does not apply the law required for a challenge under the federal Constitution (which prohibits courts from rewriting statutes), and it does not provide any basis from which this Court could conclude that the Fortune Telling Statute refers only to fraudulent activities, even beyond its plain meaning.

Similarly, in its fifth point, the Attorney General argues that the statute must be narrowly construed to refer only to fraud because it is a penal statute. ECF No. 60 at 9. This argument must first be rejected as one that the Attorney General could have raised in its original motion but did not. *See* Fed. R. Civ. P. 12(g)(2). But it also must be rejected as Pennsylvania's requirement for strict construction does not

The Attorney General argues that the Fortune Telling Statute has two reasonable interpretations because this Court found that "the word 'pretend' could be defined as including non-deceptive conduct" or could "be defined as *encompassing* 'actions done with fraudulent intent.'" ECF No. 60 at 4 (emphasis added). But this argument overplays the Attorney General's hand. For the Attorney General's argument to carry weight, it would have to demonstrate that the word "pretend" could be interpreted to mean *only* "actions done with fraudulent intent." But this Court has already rejected this argument based on the plain meaning of the term "pretend" and contemporaneous definitions. As this Court recognized, the term pretend "was not so narrowly understood to mean that one can pretend *only* by engaging in fraud." ECF No. 48 at 24. In reality, "pretend" is a broad term that, according to its plain and ordinary meaning, can encompass *both* innocent and fraudulent behavior. And the Attorney General has not offered any facts or law that would narrow the definition of "pretend" to refer to *only* fraud.

---

permit a court to rewrite the meaning of a statute; it simply provides defendants a defense against criminal liability on overbroad interpretations of law. *See, e.g.*, *Com. v. Cluck*, 252 Pa. Super. 228, 238 (1977). The law still requires that penal statutes must provide individuals "clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be." *Id.* (internal quotation omitted). As Beck plausibly alleges, the Fortune Telling Statute fails to provide such a clear and unequivocal warning, demonstrating its unconstitutionality.

11

### III.   The purpose of the Fortune Telling Statute is to demonize witchcraft, not protect against fraud.

The Attorney General next argues that, because this Court was required to determine how the Supreme Court of Pennsylvania would interpret the Fortune Telling Statute, it was required to consider "[t]he occasion and necessity for the statute." ECF 60 (quoting 1 Pa. C.S. § 1921(c)(1)) (alteration in original). Even assuming this Court were required to apply the *Erie* doctrine, it has already rejected *Commonwealth v. Viscount*, 179 A. 858 (Pa. Super. Ct. 1935), the Attorney General's cited authority, as providing an authoritative construction regarding the meaning of the Fortune Telling Statute. *See* ECF No. 48 at 26–27. Again, this Court had good reason for doing so.

The Attorney General argues that the Fortune Telling Statute must be limited to precluding fraud because *Viscount* states that the statute was "designed to protect the ignorant, superstitious, and credulous." ECF No. 60 at 6 (quoting *Viscount*, 118 Pa. Super. at 605). First, as this Court recognized, reference to *Viscount* is inappropriate because the Fortune Telling Statute unambiguously covers both innocent and fraudulent behavior, such that it is not necessary to turn to other sources to interpret the statute. *See* ECF No. 48 at 27.

Second, even if there were a question about whether the statute, on its face, encompassed innocent behavior, this Court has already concluded that *Viscount*'s

12

statement regarding the purpose of the statute is not an authoritative statement that the statute is limited to prohibiting fraud. *See* ECF No. 48 at 27. Without question, fraud is not a necessary prerequisite for the "ignorant, superstitious, and credulous" to need protection. Instead, *Viscount*'s statement of the statute's purpose reinforces the Attorney General's prohibited position that any form of fortune telling is necessarily false and, therefore, should be prohibited. As discussed in the next section, governments in this country are expressly forbidden from passing such judgments. *Viscount* does nothing to authoritatively provide the Fortune Telling Statute with a permissible meaning.

**IV.    The Attorney General has no authority to conclude that fortune-telling is necessarily false.**

In its next argument, the Attorney General reiterates his repeated claim that fortune-telling is inherently false and, therefore, the Fortune Telling Statute must, based on its context, be limited to prohibiting fraud. *See* ECF 60 at 7 (arguing that the Pennsylvania legislature "outlawed 'pretend[ing]' to tell the future alongside a host of other actions that are also undeniably impossible—such as casting "spells" and granting good or bad "luck" (internal quotations omitted) (alteration in original)). This refrain from the Attorney General—that any form of fortune telling is inherently impossible and, therefore, false—is strictly prohibited.

13

As the Eighth Circuit explained, "[g]overnment is not free to declare certain beliefs—for example, that someone can see into the future—forbidden." *Argello v. City of Lincoln*, 143 F.3d 1152, 1153 (8th Cir. 1998). Citizens have full liberty to believe that magic is real or that individuals can prophesize the future. *Id.* (citing *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1041 (E.D.Wis.1997)). Courts have repeatedly recognized that, in the United States, "the First Amendment forbids the government from arbitrating truth and fiction." *Id.* Indeed, "[f]or a government to believe that it knows all that is true and real, no matter how obvious it thinks it is, is arrogance, pure and simple." *Adams v. City of Alexandria*, 878 F. Supp. 2d 685, 691 (W.D. La. 2012). "Our Constitution protects us from such government oppression." *Id.*

In short, the Attorney General's argument that the Fortune Telling Statute must prohibit only fraud because no one truly has the ability to tell the future does nothing more than confirm the unconstitutionality and animus intent of the law.

## V. The Attorney General's newfound interpretation of the Fortune Telling Statute cannot save the law.

In its final argument, the Attorney General claims that, because the Attorney General now declares that it only interprets "pretend" to mean "fraud," this Court must accept that declaration as a limiting instruction. This Court must first reject that argument out of hand, as it is one the government either did or could have raised,

14

in its original motion. But, more importantly, this Court must reject this argument as substantively defective.

It is not enough for a government to simply claim, within the context of a litigation, that it does not interpret a statute to have an unconstitutional meaning. To the contrary, the Third Circuit has explained that "the mere fact that an agency does not currently intend to apply a statute in an unconstitutional manner cannot have the effect of an explicit limiting construction." *Conchatta Inc. v. Miller*, 458 F.3d 258, 265 (3d Cir. 2006) (citing *Odle v. Decatur County*, 421 F.3d 386, 397 (6th Cir.2005) ("[N]either proof that an ordinance as currently applied has no unconstitutional effect, nor assurances offered by the relevant local authorities that the ordinance will not be put to such an effect in the future, constitute 'constructions' of the ordinance, as that term is ordinarily understood"; *Ways v. City of Lincoln*, 274 F.3d 514, 519–20 (8th Cir. 2001) (rejecting city's assurances that a statute was "not intended to apply to artistic venues")). As such, a limiting instruction offered "in this litigation" does not qualify as a "limiting construction from a state authority" entitled to deference. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 274 (3d Cir. 2009).

The Supreme Court of California addressed this same argument in exactly this same context, explaining that "[i]t is not enough to say that the enactment is aimed at unprotected speech; there remains the real danger that a statute that also

15

encompasses protected speech will be used to punish or prohibit its exercise." *Spiritual Psychic Sci. Church v. City of Azusa*, 703 P.2d 1119, 1127 (1985). Therefore, even where a government seeks to assure the court that an ordinance is aimed only at prohibiting fraud, those assertions are not sufficient where, like here, "the ordinance contains no words to this effect." *Id.*

The United States Supreme Court has likewise rejected the Attorney General's self-serving attempt to save its statute. As the High Court explained, "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Therefore, the Court explained, courts should "not uphold an unconstitutional statute merely because the Government promised to use it responsibly." *Id.* Indeed, the Supreme Court recognized that the government's enforcement (or, here, threat of enforcement) "is itself evidence of the danger in putting faith in government representations of prosecutorial restraint." *Id.* Governmental assurance that it will apply a law more narrowly than the plain language provides is, therefore, "pertinent only as an implicit acknowledgment of the potential constitutional problems with a more natural reading." *Id.* Such is the case with the Fortune Telling Statute.

*     *     *

16

Courts across the nation—including this one—have rejected each of the Attorney General's arguments time and again. *See, e.g.*, *Argello v. City of Lincoln*, 143 F.3d 1152, 1153 (8th Cir. 1998); *Rushman v. City of Milwaukee*, 959 F. Supp. 1040, 1045–46 (E.D. Wis. 1997); *Adams v. City of Alexandria*, 878 F. Supp. 2d 685, 691 (W.D. La. 2012); *Trimble v. City of New Iberia*, 73 F. Supp. 2d 659, 667 (W.D. La. 1999); *Nefedro v. Montgomery County*, 996 A.2d 850, 860 (Md. 2010); *Spiritual Psychic Sci. Church v. City of Azusa*, 703 P.2d 1119, 1127 (Cal. 1985); *Moore-King v. County of Chesterfield*, 708 F.3d 560, 567 (4th Cir. 2013). *Cf., e.g.*, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980) ("The Village's legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation. Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly."). For the same reasons this Court has already provided, the Attorney General's Motion should be denied.

## CONCLUSION

For the reasons set forth above, Beck respectfully asks this Court to deny the Attorney General's Motion to Dismiss.

17

Dated: November 13, 2025

Respectfully submitted,

/s/ Alexa L. Gervasi

Alexa L. Gervasi (PA 334530)
**COBB & JOHNS PLLC**
13341 W. US-290, Building 2
Austin, Texas 78737
512-399-3150
512-572-8005 fax
alexa@cobbjohns.com

*Counsel for Plaintiff Rebecca Rios*

18

**CERTIFICATE OF WORD COUNT COMPLIANCE**

The below-signed certifies that this brief complies with this Court's word limit set forth in L.R. 7.8(b). This brief contains 4,051 words. Undersigned counsel relied on the word count feature of the word-processing system used to prepare this brief.


/s/ Alexa L. Gervasi

**CERTIFICATE OF SERVICE**

The below-signed hereby certifies that on this 13th day of November, 2025,

the foregoing document was electronically filed with the Clerk of the United States

District Court for the Middle District of Pennsylvania, using the CM/ECF system,

which will send notification of such filing to all counsel of record.

/s/ Alexa L. Gervasi