## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA RIOS, | : | Civil No. 1:24-CV-01399 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CHAD E. MARTIN *in his official* | : | |
| *capacity as Chief of the Hanover* | : | |
| *Borough Police Department*, and | : | |
| HANOVER BOROUGH, | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## ORDER

Plaintiff, Rebecca Rios ("Rios"), brings both as-applied and facial challenges against an 1861 Pennsylvania statute that criminalizes the act of "pretend[ing]" to do a variety of clairvoyant activities "for gain or lucre" ("Fortune Telling Statute"). 18 Pa. Stat. § 7104. The Pennsylvania Attorney General ("Attorney General"), an intervenor in this matter, moves for a second time to dismiss the facial challenges. For the reasons that follow, the motion will be denied.

### BACKGROUND

The court assumes familiarity with the court's opinion on the previously filed motions to dismiss. *Rios v. Martin*, No. 24-cv-1399, 2025 WL 2484260 (M.D. Pa. Aug. 25, 2025). In that opinion, the court concluded Rios had failed to adequately plead the as-applied challenges. *Id.* at *7. The court came to the

1

opposite conclusion with respect to the facial challenges. *Id.* at \*12. In doing so, the court rejected the Attorney General's argument that the Fortune Telling Statute only criminalizes fraud. *Id.*

Rios subsequently filed an amended complaint that lists five challenges to the Fortune Telling Statute: (1) an as-applied First Amendment challenge; (2) a facial First Amendment challenge; (3) an as-applied due process challenge; (4) a facial due process challenge; and (5) a vagueness challenge. (Doc. 58, pp. 11–21.)[1] Just as with his first motion to dismiss, the Attorney General moves to dismiss Rios's facial challenges on the basis that the Fortune Telling Statute prohibits only fraud.

### STANDARD OF REVIEW

The Attorney General's motion is styled as a motion to dismiss, rather than a motion for reconsideration, because the Attorney General does not seek to dismiss the original complaint, which the amended complaint rendered void.[2] (Doc. 60, p.

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] Rios argues that Federal Rule of Civil Procedure 12(g)(2) bars the Attorney General's motion. (Doc. 62, p. 8.) Rios cites *Diehl v. SWN Production Company*, No. 3:19-cv-1303, 2022 WL 3371327 (M.D. Pa. Aug. 16, 2022). But this case cuts against Rios's position. In *Diehl*, the court found that Rule 12(g)(2) barred consideration of arguments that the defendant could have made in a previous motion to dismiss but did not. *Id.* at \*8. It did not find Rule 12(g)(2) applicable to arguments that the defendant had previously made but the court rejected. *See id.* at \*6. Instead, the court analyzed those previously made arguments under a law-of-the-case standard of review. *Id.* at 7. This approach comports with the plain language of Rule 12(g)(2), which applies to "defense[s] or objection[s]" that were "*omitted* from [an] earlier [Rule 12] motion." Fed. R. Civ. P. 12(g)(2) (emphasis added); *see Motamed v. Chubb Corp.*, No. 15-cv-7262, 2016 WL 4581409, at \*3 n.2 (D.N.J. Sept. 1, 2016) (finding Rule 12(g)(2) inapplicable

2 n.2.)  For all intents and purposes, however, the Attorney General's motion is a motion for reconsideration.  The issue presently before the court is whether the Fortune Telling Statute prohibits only fraud.  The court squarely decided this legal question when it resolved the Attorney General's first motion to dismiss.  *Rios*, 2025 WL 2484260, at \*12.

Under these circumstances, the ordinary motion-to-dismiss standard does not apply.  The discretion to revise interlocutory orders—like an order denying a motion to dismiss—is "guided by the law-of-the-case doctrine."[3]  *Davis v. Hanna Holdings, Inc.*, --- F. Supp. 3d ---, No. 24-cv-2374, 2026 WL 654145, at \*6 (E.D. Pa. Mar. 9, 2026).  That doctrine reflects "the practice of courts generally to refuse to reopen what has been decided."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)).  In general, it "prevents reconsideration of legal issues already decided in earlier stages of a case."  *Bedrosian v. U.S. Dep't of Treasury, Internal Revenue Serv.*, 42 F.4th 174, 181 (3d Cir. 2022).  Only "extraordinary circumstances" will justify "revisit[ing] prior decisions."  *Christianson*, 486 U.S. at 817.

---

when the argument at issue "was not omitted from the earlier motion [to dismiss]").  Here, the court finds Rule 12(g)(2) inapplicable, because the Attorney General did not omit from its previous motion to dismiss the argument that he advances again in his present motion.

[3] The Attorney General acknowledges the applicability of the law-of-the-case doctrine to his motion.  (Doc. 60, p. 3 n.4.)

Those circumstances include when: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997); *accord Schneyder v. Smith*, 653 F.3d 313, 331–332 (3d Cir. 2011). Limiting reconsideration to these extraordinary circumstances "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008) (quoting *Christianson*, 486 U.S. at 816).

Here, the Attorney General seeks reconsideration of the court's previous ruling on the basis that it was clearly erroneous. (*See* Doc. 60, p. 3.) To find clear error, the court must come to possess a "definite and firm conviction that a mistake has been committed." *United States v. Jasin*, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)); *accord Drumgo v. Reese*, No. 3:20-cv-02434, 2022 WL 21758567, at *1 (M.D. Pa. Sept. 23, 2022).

## DISCUSSION

The Attorney General's overall argument is that this court clearly erred by not "predicting" how the Pennsylvania Supreme Court would interpret the Fortune Telling Statute. (Doc. 60, p. 3.) In his view, that court would interpret the Fortune

4

Telling Statute to prohibit only fraud.  In support of his position, the Attorney

General makes several specific contentions.  None of them justify reconsideration.

**A. Textual Considerations**

First, the Attorney General argues that this court considered the meaning of

"pretend" in insolation and not in the context of the statute.  (*Id.* at 6–7.)  To the

Attorney General, "pretend" must be synonymous with "defraud" because what the

Fortune Telling Statute prohibits is pretending to do impossible things for "gain or

lucre."  (*Id.* at 7.)  This argument represents a mere disagreement with the court's

previous ruling and, in any event, is unmoving.  The fact that what is prohibited is

impossible to truly do makes it *less* likely that "pretend" only means defraud.  The

response to the Attorney General's next argument shows why.

The Attorney General also faults the court for citing to "secondary

definitions of 'pretend.'"  (*Id.* at 6 n.6.)  He claims that primary contemporaneous

definitions correspond with the contemporary usage of "pretend," which the

Attorney General posits "universally includes an element of deception."  (*Id.*)  This

argument does nothing to shed doubt on the court's previous conclusion that the

cited dictionary definitions reveal the term "pretend" was not so narrowly

understood as the Attorney General insists.  If anything, the definitions show that

"pretend" had similar usages in 1861 as it does today.  While it is true, as the

Attorney General points out, that a child "pretending" to be sick very well may be

trying to deceive his parents in order to avoid school. (*Id.*) Then again, a child may also "pretend" to be a great white shark. That does not mean he is trying to deceive his parents into buying a bigger or sturdier boat. *See generally* JAWS (Universal Pictures 1975). Everyone understands the child cannot actually become a great white shark and, therefore, no one is deceived or defrauded when he pretends to be one.

The fact that the Fortune Telling Statute prohibits pretending to do impossible acts does not mean that "pretend" must be interpreted to mean "defraud." The court previously ruled as such and does so again now. Therefore, reconsideration is not appropriate on this argument.

## B. Penal Nature of the Fortune Telling Statute

Next, the Attorney General argues that the court overlooked the rule of lenity as an interpretative cannon. (Doc. 60, p. 9.) He argues that the Fortune Telling Statute should be construed to prohibit only fraud because it is a penal statute. (*Id.*) This argument fails for two reasons.

First, the Attorney General made only a cursory mention of the rule of lenity in a footnote in his initial briefing. (Doc. 43, pp. 9–10 n.12.) The court was "not obligated to consider [this] argument" since it was "made in passing in a footnote." *Ascot Specialty Ins. Co. v. Mason, Griffin & Pierson, P.C.*, No. 24-cv-4712, 2025 WL 2388433, at *7 n.9 (D.N.J. Aug. 18, 2025); *accord John Wyeth & Bro. Ltd. v.*

*CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."). The Attorney General now attempts to raise an argument that he did not properly make before. Yet, reconsideration is not the proper context "to advance an argument that could have been made to the [c]ourt before its decision." *Sec'y of Labor, U.S. Dep't of Labor v. Mennonite Messianic Mission of the E. Pa. Mennonite Church*, No. 22-cv-1355, 2026 WL 1361785, at *4 (M.D. Pa. May 15, 2026).

Second, this argument relies on a faulty premise, *i.e.*, that the court decided the Fortune Telling Statute is ambiguous.[4] It did not. Instead, the court determined that "the [Fortune Telling] Statute's prohibitions are *unambiguously* not limited to fraudulent conduct." *Rios*, 2025 WL 2484260, at *9 (emphasis added). The term pretend, as used in the statute, encompasses both fraudulent and harmless conduct alike. That is not ambiguity. *See, e.g.*, *In re Visteon Corp.*, 612 F.3d 210, 221 (3d Cir. 2010) ("[A] statute is not ambiguous simply because it is broad."). The rule of lenity only applies when a penal statute is ambiguous. *Commonwealth*

---

[4] The Attorney General bases another argument on this faulty premise. He posits that the court was required to consider the Fortune Telling Statute's purpose because it had determined the statute was ambiguous. (Doc. 60, pp. 5–6.) The court made no such finding, as explained below. Thus, this argument fails as well.

*v. Rosario*, 294 A.3d 338, 350 (Pa. 2023).  Since the Fortune Telling Statute is not ambiguous, the rule of lenity does not apply here.

### C. Weight Given to Attorney General's Proffered Interpretation

Next, the Attorney General claims that the court erroneously failed to give "great weight" to his proffered interpretation of the Fortune Telling Statute.  (Doc. 60, p. 10 (quoting *McDowell v. Good Chevrolet-Cadillac, Inc.*, 154 A.2d 497, 501 (Pa. 1959).)  He contends that by not doing so, the court contravened the Supreme Court's instruction to "consider any limiting construction that a state . . . enforcement agency has proffered."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n. 5 (1982).  The Attorney General's argument is, again, both procedurally and substantively deficient.

Procedurally, the Attorney General did not previously argue that his proffered interpretation is entitled to be considered a limiting construction under *Hoffman Estates*.[5]  Instead, he offered several state court opinions.  (Doc. 43, pp. 6–8.)  The court considered these state cases and found that they did not offer limiting constructions consistent with the Attorney General's position.  *Rios*, 2025

---

[5] The Attorney General made a brief mention of the fact that he is Pennsylvania's chief law enforcement officer in a footnote in his initial reply brief.  (Doc. 47, p. 9 n.12.)  The footnote was in a section discussing whether discovery is needed to resolve the disputes in this case.  (*Id.* at 7–10.)  Even if such a passing mention had constituted an argument that his interpretation should be considered a limiting construction under *Hoffman Estates*, the argument would not have been properly before the court.  *See United States v. Lara-Mejia*, 482 F. Supp. 3d 281, 316 n. 9 (M.D. Pa. 2020) ("An argument made for the first time in a reply brief is waived.").

WL 2484260, at *10–11.  "[A] [request] for reconsideration is not a means to get a 'second bite at the apple.'"  *Bacon v Luzerne Cty.*, No. 3:23-cv-1699, 2026 WL 84729, at *2 (M.D. Pa. Jan. 12, 2026) (quoting *Kropa v. Cabot Oil & Gas Corp.*, 716 F. Supp. 2d 375, 378 (M.D. Pa. 2010)).  The court will not reconsider its previous decision on the basis of an argument that the Attorney General submits now because his frontline argument failed.

Substantively, the Attorney General's proffered interpretation—which he offers specifically for this litigation—is hardly the limiting construction of a state agency contemplated by *Hoffman Estates*.  *See Brown v. City of Pittsburgh*, 586 F.3d 263, 274 (3d Cir. 2009) (finding "the absence of a limiting construction" when the only one offered was "the one . . . by the [defendant] in th[at] litigation"); *Conchatta Inc. v. Miller*, 458 F.3d 258, 265 (3d Cir. 2006) ("[T]he mere fact that an agency does not currently intend to apply a statute in an unconstitutional manner cannot have the effect of an explicit limiting construction."); *cf. United States v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government

9

promised to use it responsibly.").[6]  Reconsideration is not warranted on this ground.

### D. Constitutional Avoidance

Finally, the Attorney General takes exception with how the court applied the constitutional-avoidance doctrine.  (Doc. 60, p. 7–9.)  In its previous opinion, the court found the doctrine inapplicable, because the Fortune Telling Statute's language was not "'fairly susceptible' to the narrow interpretation" the Attorney General proffered.  *Rios*, 2025 WL 2484260, at *11.  The Attorney General now argues that conclusion was clearly erroneous.  He contends that the court should have either looked past the statute's text or even "altered" it to avoid the constitutional issue.  (Doc. 60, pp. 7–8.)

The Attorney General's position conflicts with ample Pennsylvania caselaw regarding the application of the constitutional-avoidance doctrine.[7]  *See, e.g.*,

---

[6] The Attorney General also argues that his interpretation should be given significant weight because having offered the interpretation in this litigation, he is now bound by it in future litigations.  (Doc. 60, p. 10.)  Even assuming, *arguendo*, that the Attorney General is so bound, the argument is a red herring.  The Attorney General is not the only law enforcement officer in Pennsylvania.  District attorneys, too, may "conduct criminal litigation and prosecution on behalf of the Commonwealth, and . . . decide whether and when to prosecute, and whether and when to continue or discontinue a case."  *Commonwealth v. McElroy*, 665 A.2d 813, 816 (Pa. Super. Ct. 1995) (quoting *Commonwealth v. Stipetich*, 652 A.2d 1294, 1295 (Pa. 1995)).  The Attorney General acknowledges as much in his briefing.  (*See* Doc. 60, p. 10 (explaining the Attorney General must advance his current position in future criminal prosecutions "if he or she intervenes").)  Yet he fails to explain why his taking the position he does in this litigation binds district attorneys' future prosecutorial decisions.

[7] It similarly conflicts with the Supreme Court's repeated instruction that the doctrine is inapplicable without statutory ambiguity.  *See, e.g.*, *Dep't of Homeland Sec. v. Thuraissigiam*,

*Robinson Twp. v. Commonwealth*, 147 A.3d 536, 574 (Pa. 2016) ("Although courts should interpret statutes so as to avoid constitutional questions when possible, they cannot ignore the plain meaning of a statute to do so."); *Commonwealth v. Omar*, 981 A.2d 179, 185 (Pa. 2009) ("Although we must presume that the legislature does not intend to violate the Constitution, we do not invoke that presumption where the language is clear."); *Hous. Auth. of Chester v. Pa. State Civil Serv. Comm'n*, 730 A.2d 935, 948 (Pa. 1999) ("While we strive to interpret statutes in a manner which avoids constitutional questions, we will not ignore the plain meaning of the statute to do so."). Given these authorities, the Attorney General's argument does not leave the court with a "definite and firm conviction that a mistake has been committed." *Jasin*, 292 F. Supp. 2d at 676.

The two cases upon which the Attorney General relies do not change this outcome. First, the Attorney General cites *Commonwealth, Department of Transportation v. McFarren*, 525 A.2d 1185 (Pa. 1987).[8] The *McFarren* court employed the constitutional-avoidance doctrine because the statute at issue was ambiguous. *Id.* at 1187–88. It did not state that a court may ignore, alter, or

---

591 U.S. 103, 133 (2020); *McFadden v. United States*, 576 U.S. 186, 197 (2015); *Warger v. Shauers*, 574 U.S. 40, 50, (2014).

[8] The Attorney General claims he "cited and discussed" *McFarren* in his initial briefing. (Doc. 60, p. 9.) That is a stretch. He first cited *McFarren* in a string cite in a footnote in his reply brief. (Doc. 47, p. 4 n.5.)

otherwise rewrite the text of an unambiguous statute to spare it from constitutional scrutiny.

Second, the Attorney General cites *Stretton v. Disciplinary Board of the Supreme Court of Pennsylvania*, 944 F.2d 137 (3d Cir. 1991). In that case, the Third Circuit considered the constitutionality of a cannon in Pennsylvania's Code of Judicial Conduct that prohibited judicial-office candidates from "announc[ing] [their] views on disputed legal or political issues." *Id.* at 141. Applying strict scrutiny, the court held that the cannon was narrowly tailored to serve a compelling government interest after interpreting it to prohibit announcing views only on issues likely to come before the court. *Id.* at 144. About a decade later, the United States Supreme Court came to the precise opposite conclusion regarding an identical cannon in Minnesota. *Republican Party of Minn. v. White*, 536 U.S. 765, 788 (2002).

Given *White*, it is doubtful that the Pennsylvania Supreme Court is going to follow *Stretton*. Indeed, that court recently affirmed that "[t]he precedential or persuasive value of *Stretton* post-*White* is doubtful." *In re Cohen*, 349 A.3d 865, 881 n.18 (Pa. 2026), *petition for cert. filed sub nom. Cohen v. Judicial Conduct Bd. of Pa.*, No. 25-1215 (U.S. Apr. 21, 2026). The Attorney General's reliance on a circuit opinion that was effectively overruled by the Supreme Court—and that the

12

Pennsylvania Supreme Court finds unpersuasive—does little to convince the court reconsideration is appropriate here.

CONCLUSION

For the reasons set forth above, **IT IS ORDERED THAT** the Attorney General's motion to dismiss, Doc. 59, is **DENIED**.

**IT IS FURTHER ORDERED THAT** the current stay of case management deadlines, Doc. 68, is **VACATED**.  A telephone status conference to discuss setting new deadlines is **SCHEDULED** for **July 22, 2026, at 10:30 a.m.**  The parties shall call-in to the conference calling number 570-218-8447, using the phone conference ID 660 227 256#.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 10, 2026

13